LOUIS JOSEPH COLLETTE, administrator, *vs.* ALBERT MOSQUS.

Worcester. September 23, 1936. — October 29, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Negligence*, Gross, Motor vehicle, Contributory.

That the driver of an automobile while under the influence of intoxicating liquor drove it down a street and into a pond for twenty to twenty-five feet was evidence of his gross negligence.

A finding that one riding in an automobile was guilty of contributory negligence was not required as a matter of law by evidence merely that, with knowledge that the driver had been drinking intoxicating liquor, he entered the automobile and did not avail himself of opportunities to leave it.

TORT by the administrator of the estate of Albert Collette. Writ in the Superior Court dated October 13, 1932.

The action was tried before *Broadhurst*, J., who denied a motion that a verdict be ordered for the defendant. There were verdicts for the plaintiff, in the sum of $500 for conscious suffering and in the sum of $5,890 for death. The defendant alleged exceptions.

*M. J. Rubin*, (*J. G. Harnedy & J. C. McDonald* with him,) for the defendant.

*J. M. Hart*, (*C. W. O'Connor* with him,) for the plaintiff.

CROSBY, J.  This is an action of tort brought to recover for the conscious suffering and death of the plaintiff's intestate, Albert Collette, which occurred on November 13, 1931, while he was riding as a guest in an automobile owned and operated by the defendant, Albert Mosqus, otherwise known as Albert Morse. At the close of the evidence, a motion filed by the defendant that a verdict be directed in his favor was denied, subject to his exception. The case was submitted to the jury on the second and third counts, the first and fourth having been waived by the plaintiff.

There was evidence from which the following facts could have been found. The plaintiff's intestate was twenty-one years and eight months old at the time of his death. He was employed in a store in Worcester, and worked there the evening of November 12, 1931, until about 10:30 P.M. The defendant was employed at the same store. After finishing their work the intestate and the defendant entered the defendant's automobile; later they met two girls who entered the automobile and they drove away. They stopped at a place where the defendant purchased a pint of liquor. The party then went to a cottage on Lake Quinsigamond where they remained until about 1:30 A.M.

The defendant, who was called by the plaintiff, testified that he was the owner of the automobile involved in the accident; that at that time he had a license to operate it; that the intestate was on the running board, and the two girls sat on the seat with the witness when the girls boarded the automobile; that on the way to the lake he bought some liquor; that they drove around Lake Quinsigamond, and

went into a cottage at the lake at about eleven or eleven thirty o'clock and left there about one thirty o'clock in the morning; that they danced and the girls and he had drinks; that the intestate had one drink; that the witness drove the automobile back and took the girls home; that they sat on the seat with him and the intestate rode on the running board; that he did not know how much gin he drank at the cottage; that the intestate objected to the way he was driving; and that he (the witness) was under the influence of liquor at that time.

There was evidence that, after the defendant took the girls to their homes, accompanied by the intestate, he drove over Lakeside Street into a pond, known as Coes Pond; that the lights upon the automobile enabled searchers to locate it; that they remained lighted until it was removed from the pond; that the defendant operated his automobile from the end of Lakeside Street at a rate of speed which carried it into the water for a distance of from twenty to twenty-five feet; and that the plaintiff's intestate was drowned.

Two police officers testified that about three o'clock on the morning of the accident at Coes Pond, they received a telephone call in response to which they went to a lunch cart, in Worcester, where they found the defendant lying on the floor; that his clothes were very wet; that he had a strong odor of liquor; that there was a cut on his left leg; that the left leg of his trousers was torn; that nothing was done for him at that time except to take the water out of his body; and that he was placed under arrest. There was testimony from one of these officers that he then went to the pond and started looking for the body of the plaintiff's intestate; that he saw two beams of light coming up from the water; that he detailed officers who were with him to send additional help from headquarters; that thereafter by the use of grappling hooks they obtained the body of Albert Collette, and finally got the automobile out of the water; that the two beams of light were about fifteen feet from the shore; that the water at that point was approximately twenty-five feet deep; and that the automobile came out of the water with the front toward the shore. Another

police officer who went to the scene of the accident testified substantially to the same effect as hereinbefore recited. He further testified that in an interview at the city hospital, he asked the defendant who was driving the automobile and the defendant said that he was too drunk to drive, so he turned the wheel over to Collette and that Collette was driying at the time of the accident; and also that he made no attempt to save Collette — he had enough to do to save himself. There was evidence that the defendant was asked how his trousers became torn, and he replied that he got them caught between the pedals while trying to get out of the automobile; that he was "trying to release himself from the clutch pedals and the brake pedal"; and that he pulled himself free from the clutch pedal. The defendant testified that he recalled what happened to him after he got in the pond; that he remembered telling the officers that "his feet got caught in the pedals of that automobile; that his trousers were torn." He stated on cross-examination that he did not recall testifying that at the time the automobile went into the water he was not operating it.

A witness called by the plaintiff testified that he was an investigator for the registry of motor vehicles; that he went to the place of the accident on the morning it occurred at about eight o'clock, and there saw a pint liquor bottle in an upright position on the shore of the pond; that it smelled like gin and was less than half full; that he afterwards interviewed the defendant at the hospital and showed him the bottle; that the defendant told him it was the bottle of gin he purchased the night he went to the pond with the two girls and Collette; and that the defendant stated that Collette had but one drink and that he (the defendant) drank about half of the pint. There was no evidence that the plaintiff's intestate, the defendant or the girls had any liquor that night except the pint of gin which had been purchased by the defendant, and no evidence that up to the time of leaving the girls at their homes there was any careless or improper operation of the automobile.

The single question for the determination of this court is whether there was error in the refusal of the trial judge, at

the conclusion of the evidence, to direct a verdict for the defendant. The undisputed evidence shows that on the night the plaintiff's intestate lost his life he was a guest of the defendant while riding in the defendant's automobile. The evidence warranted findings that the defendant was under the influence of intoxicating liquor, that in the exercise of reasonable care he should have stopped when, he approached the end of Lakeside Avenue, as the lights on his automobile were lighted and remained so until after the automobile was removed from the water, and that the death of the plaintiff's intestate was caused by gross negligence of the defendant. G. L. (Ter. Ed.) c. 229, § 5. *Slora* v. *Streeter & Sons Co.* 264 Mass. 586. *King* v. *Weitzman,* 267 Mass. 447. *Kirby* v. *Keating,* 271 Mass. 390. *Gallup* v. *Lazott,* 271 Mass. 406. *Meeney* v. *Doyle,* 276 Mass. 218. The jury were not required to believe the statement of the defendant, that at the time of the accident Collette was driving the automobile, which was made at the hospital in reply to a question by Officer Burke as to who was driving when the accident occurred. The defendant's statement to the officer that his trousers were torn by getting caught "between the pedals of the automobile trying to release himself to get out of the car; that . . . he was trying to release himself from the clutch pedals and the brake pedal," could have been found to be true. From this testimony the jury were warranted in finding that the defendant was operating the automobile at the time the plaintiff's intestate met with his death by drowning.

The evidence did not require a finding that the plaintiff's intestate was guilty of contributory negligence.*

It is plain upon the entire evidence that the defendant's motion for a directed verdict in his favor was rightly denied.

*Exceptions overruled.*

---

* No request for ruling appeared in the record. The only exception there noted was to the denial of the defendant's motion that a verdict be ordered in his favor.

The defendant in his brief in this court argued that evidence that the plaintiff's intestate, when he entered the automobile, knew of the driver's condition and, though he had opportunities later, did not leave the automobile, required a finding that he was guilty of conduct which precluded recovery, citing, among other decisions, *Laffey* v. *Mullen,* 275 Mass. 277, and *Curley* v. *Mahan,* 288 Mass. 369. The plaintiff in his brief, among other decisions, cited *O'Connell* v. *McKeown,* 270 Mass. 432. — REPORTER.