DALE E. DAVIS, administratrix, *vs.* PETER L. WALENT
& others.[1]
(and a companion case[2]).

Middlesex. January 11, 1983. — May 23, 1983.

Present: HALE, C.J., ROSE, & WARNER, JJ.

*Negligence,* Motor vehicle, Gross. *Motor Vehicle,* Permission to operate, Entrustment. *Practice, Civil,* Remittitur, Instructions to jury. *Evidence,* Admissions, Cumulative. *Damages,* Wrongful death.

At the trial of a motor vehicle negligence action evidence warranted a finding that the defendant had been negligent in permitting his automobile to be operated by a sixteen year old whose California license to operate had a restriction on it allowing him to drive only to work or school as a result of his having driven while intoxicated. [87-90]

A defendant in a motor vehicle negligence action who had made no objection to the judge's charge to the jury defining an incompetent operator in response to the defendant's request was not entitled to challenge the instruction on appeal. [90]

At the trial of a motor vehicle negligence action a defendant whom the jury found to have been negligent in entrusting his automobile to a second defendant was not prejudiced by a statement made by plaintiff's counsel in his opening and by a question asked the second defendant which was excluded by the judge. [91]

At the trial of a motor vehicle negligence action there was no error in the admission in evidence of a statement by a passenger in the automobile to a police officer that the defendant was the driver of the automobile. [91]

A defendant in a motor vehicle negligence action could not complain that a police officer was allowed to state that when he went to the hospital room of another defendant to ask about his license the officer had been told to get out, where the police officer had earlier testified to the same effect without objection. [91-92]

---

[1] Alfred J. Gray and Joseph E. Baker, III.

[2] In the companion case Gray brought suit against Baker and Walent.

At the trial of a motor vehicle negligence action evidence warranted a finding of gross negligence on the part of a defendant who had been operating an automobile above the speed limit and while intoxicated. [92-94]

At the trial of a motor vehicle negligence action the judge adequately instructed the jury respecting the contributory negligence of the plaintiff's decedent in becoming a passenger in an automobile operated by an intoxicated driver. [95]

At a trial of a motor vehicle negligence action the judge correctly instructed the jury on compensatory damages under G. L. c. 229, § 2, for the death of the plaintiff's decedent. [95-96]

The judge in a motor vehicle negligence case did not abuse his discretion in denying a motion for a new trial on a defendant's claim that the jury's assessment of damages, and their conclusion that the passengers in the vehicle had not been contributorily negligent, were indicative of bias. [96-97]

At the trial of an action to recover damages resulting from an accident involving an automobile driven above the speed limit by an intoxicated sixteen year old who did not have a valid license to operate it, evidence did not warrant a finding of gross negligence by the owner of the automobile in giving the sixteen year old permission to drive the automobile. [97]

CIVIL ACTIONS commenced in the Superior Court Department on July 27, 1979, and December 12, 1980, respectively.

The cases were tried before *Irwin*, J.

*Richard K. Donahue* for Peter L. Walent.

*Thomas D. Dolan* for Joseph E. Baker, III.

*Wade M. Welch* (*Robert T. Nagle* with him) for Dale E. Davis.

*Richard P. Howe* for Alfred J. Gray.

HALE, C.J.   These actions sounding in tort arose out of an accident which occurred at about 4:00 A.M. on July 11, 1978, on Shawsheen Street in Tewksbury, involving one automobile. Three young men, Steven G. Davis, Alfred J. Gray, and Joseph E. Baker, III, were riding in the automobile which was owned by the defendant Peter Walent. The automobile went off the road and struck a telephone pole resulting in Davis' death and injuries to the other two.

The mother of the deceased, Dale E. Davis, in her capacity as administratrix of Steven's estate, brought an action against Baker for wrongful death. Walent, the owner of the car, was also named as a defendant by Davis.[3] The claimed basis of his liability was that the driver of the car was his agent (count 1) and that Walent had negligently entrusted the car to the operator (count 2). There were further claims seeking punitive damages for gross negligence against Baker (count 6) and against Walent for gross negligence in the entrustment of the vehicle (count 3). Gray brought an action against Baker claiming personal injuries resulting from negligent operation of a motor vehicle. Gray's complaint also included a claim against Walent on agency and negligent entrustment theories.

The actions were consolidated for trial and were submitted to the jury on special questions. In the Davis case, the jury found that Baker was the operator of the motor vehicle; that Baker was not the agent, servant, employee or person for whose conduct Walent was legally responsible; that Baker was negligent and grossly negligent in operating the vehicle; that Walent was negligent and grossly negligent in the entrustment of the vehicle to Baker; and that the decedent was not negligent. Compensatory damages in the amount of $200,000 were awarded to Davis against Baker and Walent. Punitive damages of $75,000 and $100,000 were awarded against Baker and Walent, respectively. In Gray's case, the jury awarded $15,000 in damages against Baker and Walent. In both cases the jury found Baker and Walent to be one hundred percent at fault and Davis and Gray to be without fault.

Walent moved for judgments notwithstanding the verdicts (judgment n.o.v.) on counts 2 and 3 of the Davis com-

---

[3] A count for conscious suffering was included but was later discontinued. As the identity of the driver was uncertain at the time the action was brought, Gray was also named as a defendant. The jury determined that Baker was the driver, and there was no appeal from the ensuing judgment for Gray as a defendant. An action brought by Baker against Gray is not before us.

plaint.  The motion on count 2 was denied and the motion on count 3 was allowed.  Walent and Baker have appealed from judgments on the verdicts, and Davis has cross appealed from the allowance of Walent's motion for judgment n.o.v. on count 3.

We outline some of the facts which could have been found by the jury.  In the summer of 1977 when Baker was only fifteen and had no license to operate a motor vehicle, Walent allowed him to drive his car.  In mid June, 1978, Davis and Baker, then both sixteen years of age and residents of California, arrived in Massachusetts to visit Walent and his wife, Mildred, Baker's great aunt, at their home in Tewksbury.  At all times during their stay in Massachusetts, Baker and Davis lived with the Walents.  Gray, who was Mildred's nephew, lived with his family across the street from the Walent home.

Baker had obtained a California motor vehicle operator's license in November of 1977, when he became sixteen years of age.  When Baker arrived in Massachusetts, in June of 1978, Walent permitted him to drive Walent's Chrysler automobile.  The keys to the car were kept on the Walent's kitchen table, and Baker was permitted to use the car whenever it was available.  From the time of Baker's arrival until July 10, 1978, Baker operated Walent's car approximately thirty times without incident.  During that time, Baker bought seven cases of beer and stored them in Walent's basement. Some cans were also kept there in a refrigerator.  On occasions, Gray visited Baker and Davis at the Walent's house, where all three boys were served beer by the Walents.  No later than the evening of July 10, 1978, Peter Walent learned that Baker's California license had been restricted as the result of an incident in California in which Baker was found to have been driving while intoxicated.  The restriction, which prohibited Baker's operation except to drive to work or to school, was printed on the back of his license.

Later on the evening of July 10, Baker, Davis, and Gray went to a place known as the "Ink Factory Field" in Tewksbury.  That place was a rendezvous for teenagers

where they drank alcoholic beverages. While there, Baker, Davis, and Gray each drank four or five cans of beer. At about 11:00 P.M. the three left the field and went to a "screen house" located in Gray's back yard. There they consumed three "one-half fifth's" of a "pre-mixed whiskey." At approximately 3:00 A.M. they left the screen house in an intoxicated state. Baker returned to the Walent's house, obtained the keys to Walent's car from the kitchen table and then drove the car away. The Walents were asleep at this time. At about 4:00 A.M. Baker rejoined Davis and Gray, and the two entered the automobile. Baker drove the car to a local shopping center parking lot, where he performed "fishtails" with the car. The car then entered Shawsheen Street, where Baker increased its speed and was told by Davis to "slow down." Baker nevertheless continued to accelerate the car until it reached a speed of sixty miles per hour. The posted speed limit on that road was forty miles per hour. Shortly after rounding a curve, Baker lost control of the vehicle, and it collided with a telephone pole. All three were thrown from the car. Davis was killed, and Baker and Gray were both injured. Other facts relating to specific issues are outlined later in the opinion.

A. *Walent's Appeal.*

(1) Walent has appealed from the denial of his motion for judgment n.o.v. on count 2, claiming that the plaintiffs have failed to produce facts sufficient to establish that he negligently entrusted his automobile to Baker. Negligent entrustment may be based on a showing of a violation of G. L. c. 90, § 12, which provides: "No person shall employ for hire as an operator any person not licensed in accordance with this chapter. No person shall allow a motor vehicle owned by him or under his control to be operated by any person who has no legal right so to do, or in violation of this chapter." *Leone* v. *Doran*, 363 Mass. 1, 8 (1973).

There was evidence that when Baker arrived at Logan Airport on June 17, 1978, he had a California license which, as stated above, had a restriction on it allowing him to drive only to work or school. Walent picked Baker up at the air-

port. At that time he asked Baker whether he had a license, and Baker answered affirmatively. Walent did not ask Baker to show him the license. He did, however, tell Baker that he could use the car (the ownership of which was stipulated to) whenever it was "available" and that the keys would be kept on Walent's kitchen table. The jury were warranted in finding that the permission was never withdrawn. (The jury were not required to believe the evidence that Walent first learned of the restriction on the evening of July 10 and had then limited Baker's use of the car to times when he had a licensed operator with him to operate it.) Baker used the car on about thirty occasions without incident until the early morning hours of July 11, when the accident occurred.

At no time during his stay with the Walents was Baker employed or attending school, and thus when he operated Walent's vehicle he was operating beyond the authority of his license. He was thus in effect an unlicensed operator on all such occasions. *Commonwealth* v. *Magarosian*, 261 Mass. 228, 229 (1927). It was a violation of G. L. c. 90, § 12, to permit Baker to operate the car, even if Walent had no knowledge that Baker had a restricted license and had no right to operate beyond the limitation. See *Fitiles* v. *Umlah*, 322 Mass. 325, 326 (1948); *Leone* v. *Doran, supra* at 9. The jury were therefore warranted in finding that Walent violated G. L. c. 90, § 12. Since such a violation is some evidence of negligence (*id.* at 8), the jury were also warranted in finding that Walent was negligent in entrusting his car to Baker. That negligence must be "causally related to the accident and the plaintiff's injuries" for liability to attach as a result. *Id.* at 10. We hold that the jury were warranted in finding that the accident causing the injuries suffered by the plaintiffs was causally related to the negligence of Walent when he entrusted his car to Baker, for as was said in *Gordon* v. *Bedard*, 265 Mass. 408, 412-413 (1929)[4]: "'When it is said that the cause to be sought

---

[4] In *Gordon* the operator had lost his license for driving under the influence of liquor.

is the direct and proximate cause, it is not meant that the cause or agency which is nearest in time or place to the result is necessarily to be chosen. . . . The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the direct and proximate cause referred to in the cases.' *Lynn Gas & Elec. Co.* v. *Meriden Fire Ins. Co.,* 158 Mass. 570, 575 [1893].

"The defendant's wrongful act in allowing [Baker] to operate the [automobile] continued to be an active force at every instant of time when [Baker] was operating it. Because of that permission [Baker] was placed where he could cause the injuries to the plaintiffs.

"[General Laws c. 90, § 12,] was passed to make the roads more safe and convenient for travellers by preventing unlicensed persons from operating motor vehicles thereon. The purpose of licensing operators of automobiles is to make it reasonably certain that the licensee is qualified for the task and a proper person to be licensed. . . . Negligent operation of an automobile endangering the safety of other travellers is likely to follow if an unlicensed person is given complete control of its operation. . . . Upon all the evidence it was for the jury to say whether [Walent] should have anticipated or foreseen that if [Baker] operated the [car] it was reasonably probable that he would so negligently operate it that other travellers would be endangered.

"The defendant cannot be relieved of responsibility as matter of law when the jury could properly find that his own violation of law was the cause of [Baker's] being in a position to cause the damage by his negligent act, and that such negligence should reasonably have been anticipated as likely to occur. *Stone* v. *Boston & Albany R.R.,* 171 Mass. 536, 539 [1898]. The injury caused by [Baker's] negligent act was not so remote that as matter of law the defendant was relieved from liability." See also *Leone* v. *Doran,* 363 Mass. at 7-11. Thus, the plaintiff's evidence was sufficient to show that Walent actually entrusted a chattel to someone

whom he knew was incompetent or unfit to use it safely and "that the entrustee's [Baker's] incompetence or unfitness constituted the legal cause of the plaintiff's injuries." *Kunkel* v. *Alger,* 10 Mass. App. Ct. 76, 82 (1980).

(2) Walent claims error in the denial of his motion for a new trial because of: (a) an error in instructing the jury by failing to define "incompetent" as it related to Baker as a driver of Walent's car; (b) errors in admission of certain evidence; and (c) misconduct of Davis' counsel in suggesting in his opening and in a question posed to a witness that Baker's license had also been suspended for speeding, as no evidence to that effect was produced at trial. A motion for a new trial is not appropriate to raise errors occurring in the course of the trial, but inasmuch as the errors claimed are a part of the defendant's appeal, we shall consider them.

(a) Walent claims error in the judge's failure to define or illustrate the meaning of the term "incompetent" as used in the definition of negligent entrustment. At the conclusion of the judge's charge, Walent's counsel called the judge's attention to his failure to give a "description [of] an incompetent operator." The judge asked counsel, "Do you have a definition that you want me to give them?" As counsel's answer to that question was essentially negative and was not helpful to the judge, he then gave his own definition to the jury. No objection was made to that instruction. There is therefore nothing properly before us.

(b) Walent claims five instances of erroneous rulings on evidence. In the first three, the statements adduced were relevant, and Walent was a party to the conversations in which the questioned statements were made. The statements were such that Walent would have corrected them had he been in disagreement with them. *Commonwealth* v. *Saltzman,* 258 Mass. 109, 110 (1927). *Refrigeration Discount Corp.* v. *Catino,* 330 Mass. 230, 238 (1953). Liacos, Massachusetts Evidence 287-288 (5th ed. 1981). The fourth claim of error concerns testimony about gifts given by the Walents to Baker. We see no relevancy in this testimony,

nor do we see any harm to Walent resulting from its admission. The fifth error alleged was in the admission of testimony to the effect that Walent was concerned about losing his driver's license as a result of the accident. There was no objection made to that testimony, and that matter is not properly before us.

(c) Walent also charges misconduct on the part of Davis' attorney in asking Baker whether he had told Walent that his license had been suspended for speeding. After a voir dire to hear what Baker's answer would be, the judge excluded that question. Nor was the prediction made by Davis' attorney in his opening remarks that evidence would be produced that Davis had lost his license for speeding of any evidentiary value or prejudice to Walent.

There was no error in the denial of the motion for a new trial.

B. *Baker's Appeal.*

In his appeal Baker alleges error in five areas which we consider.

(1) Baker contends that the judge erred in admitting testimony of a police officer concerning a statement made by Gray at the scene of the accident when a police officer asked him who was driving the car. The officer testified that Gray told him that Baker was the driver. On objection the judge allowed the answer to stand, apparently as an adoptive admission. Baker argues that there was no evidence that the statement was heard by him or that he was in a position to respond to it. That argument totally ignores the police officer's testimony, given immediately before the above question was asked, that Baker was conscious and that the officer was standing near him. Moreover, eight lines of transcript later it is revealed that the officer asked Baker if he was the operator, and Baker answered that he was. The error, if any, was harmless. *Saeli* v. *Mangino,* 353 Mass. 591, 593 (1968). *Burns* v. *Combined Ins. Co.,* 6 Mass. App. Ct. 86, 92 (1978).

(2) On cross-examination of the officer by Gray's attorney, the officer answered "Yes" to the question, "Now,

when you went back to the hospital and you talked with Joseph Baker he told you to get out of the room, is that right?" Over counsel's objection the officer was permitted to answer, "Yes." Other than to note that the officer's purpose in seeking to talk to Baker was to inquire about his license, we need not discuss the admissibility of the foregoing, as it appears that the officer a short time earlier testified to the same effect without objection when he was under direct examination by Davis' attorney, and thus the evidence objected to was merely cumulative.

(3) Baker assigns as error the judge's denial of his motion for a directed verdict on count 6 of Davis' complaint by which Davis sought punitive damages based on Baker's gross negligence in his operation of the motor vehicle. G. L. c. 229, § 2, as amended by St. 1973, c. 957. Baker claims that the evidence did not warrant a finding of gross negligence.[5] A classic statement of what constitutes gross negligence is found in *Altman* v. *Aronson,* 231 Mass. 588, 591-592 (1919), where the court stated: "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something

_____

[5] Davis properly does not argue that the evidence warranted a finding of wanton or reckless conduct, and we do not address that matter.

less than the wilful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is or ought to be known to have a tendency to injure." Except for the antepenultimate sentence, the judge's charge was virtual verbatim reading of the above definition of gross negligence.

The jury were warranted in finding the following facts and applying the judge's definition of gross negligence to them. The defendant was "unsteady drunk" by the time he picked up the decedent and Gray, who were similarly under the influence of alcohol from beer and a half a fifth of "premixed whiskey" which each had consumed shortly before. Baker drove them in his uncle's car to the parking area of a nearby shopping mall where Baker drove the car in circles and "fishtailed it" by accelerating the motor and turning the wheel from one side to the other. These maneuvers caused the wheels to "squeal" and to "chirp." The occupants of the car found pleasure in these maneuvers and sounds. Baker was able to maintain control of the vehicle, and no complaint was made as to its operation. The course of events, however, rapidly changed when Baker drove the car out onto Shawsheen Street which had a smoothly paved surface twenty-four feet wide with gravel shoulders on both sides. The posted speed limit was forty miles per hour. The distance between the point of entrance of the car onto Shawsheen Street and the point of the accident was three to four tenths of a mile. The street was a straightaway except for a left-bearing turn about half way along that segment.

When Baker entered the street from the parking lot, he increased the speed of the car and was cautioned by the decedent to slow down. Gray asked him what he was do-

ing. Baker continued to increase speed and was going about sixty miles per hour when he entered the curve. At that point the car started "fishtailing" back and forth. At a point about 400-500 feet from the curve, the car left tire marks 148 feet in length, indicating that while the car's wheels were rolling they were subjected to yawing or outside pressures of a turn. These marks started near the center of the road and made the form of an arc into the right hand lane and back to and across the center line, where the marks ceased. From this point the car proceeded directly to a telephone pole. The left headlight of the car hit the pole, breaking off the pole in some manner so that the left side of the car was extensively damaged and the rear left wheel was broken off. The car then came to a halt just off the road, heading in the direction from which it had come. All three occupants were thrown from the car.

While the case may be a close one, we are of opinion that it was properly submitted to the jury. It was open to them to determine that the "fishtailing" of the vehicle after it had rounded the curve was the result of the intoxication of the driver either by reason of his inability to control the vehicle due to speed or because he had purposely "fishtailed" the automobile, heedless of the risks involved and in that process had lost control over it, and that his conduct constituted gross negligence. See *Caldbeck* v. *Flint,* 281 Mass. 360, 361-362 (1933); *Collette* v. *Mosqus,* 295 Mass. 576, 580 (1936); *Dean* v. *Bolduc,* 296 Mass. 15, 16-17 (1936); *Blackmun* v. *Coffin,* 300 Mass. 432, 437-438 (1938); *Haggerty* v. *Sullivan,* 301 Mass. 302, 303-304 (1938); *Hastings* v. *Flaherty,* 321 Mass. 368, 370 (1947).

(4) Baker claims that the judge erred in refusing to charge the jury in accordance with two of his requests and erred in his instruction on compensatory damages.

(a) One request would have had the judge instruct the jury to disregard the officer's testimony concerning the statement of Gray made at the scene of the accident which we have discussed in part 1 above. That request was properly denied for the reasons stated in that part.

(b)  The other request concerned whether Davis could be found to be contributorily negligent in becoming a passenger in the car should the jury determine that he knew that Baker was under the influence of intoxicating beverages. Despite Baker's argument to the contrary, the judge was not required to charge on the legal effect of fragments of the evidence. *McCormick* v. *B.F. Goodrich Co.*, 8 Mass. App. Ct. 885, 887 (1979). We are satisfied that the judge adequately covered that point in his charge.

(c)  In his charge on compensatory damages for the death of Davis, the judge told the jury that if they got to the point of assessing such damages they would "have to determine the fair monetary value of the life of that young man to his mother and father in terms of certain things that are set out in the wrongful death statute" and which he would enumerate to them.  The judge then informed the jury that as funeral expenses had been stipulated to they did not have to be concerned with them.  He instructed them that under the wrongful death statute they were to make "some determination in a monetary way as to the value of this young man's life to his parents in terms of so-called intangible areas and this is where it gets difficult but you have to bear all of these in mind."  He then proceeded to tell the jury what the plaintiff was allowed to recover under G. L. c. 229, § 2, as amended by St. 1973, c. 957, § 1, in a way that Baker concedes in his brief was correct.  At the conclusion of the charge Baker's counsel objected to the jury being told that they "should consider the fair monetary value of the life of that young man."  As to this, Baker's counsel said, "One more thing.  When you were referring to the measure of damages in the death case, you stated that they should consider the fair monetary value of the life of that young man.  I suggest that is incorrect.  They are not considering the value of the life.  They're considering the monetary damages as set forth in the statute.  The way it came out, judge, it sounded in a way as though they had to consider the fair monetary value of the life of this young man."

Baker now presses that same notion on appeal, submitting that "the statute does not allow compensation for the value of a loss of a human life as such." Viewing the questioned words in isolation, that argument is correct, for the statute provides for compensatory damages in the amount of "(1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered; (2) the reasonable funeral and burial expenses of the decedent . . . ." However, when we view the entire charge it is abundantly clear that the jury were not instructed that they were to find the value of the decedent's life to his parents. Rather, they were limited to the specific elements of damage set out in the statute by the carefully, properly stated and repeated words of the judge.

(5) Lastly, Baker claims error in the denial of his motions for new trials on both the Davis and Gray complaints. He claims that the verdicts were "not based on the evidence but were based on passion, prejudice or bias." He asserts that the verdicts were excessive and that this was evidence of bias. He cites the jury's determination that Davis and Gray were not negligent in voluntarily getting into the car with Baker also as evidence of the jury's bias.

Our reading of the record leads us to the conclusion that while the judge could properly have ordered a remittitur, at least from the verdicts in the Davis case, he cannot be faulted for not doing so. It has been so often said that it hardly needs repeating that "the question whether a new trial should be granted for excessive or inadequate damages or for other reasons is within the 'discretion' of the trial judge." *Bartley* v. *Phillips,* 317 Mass. 35, 42 (1944). "[A]n award of damages must stand unless to . . . permit it to stand was an abuse of discretion . . . amounting to an error of law." *Id.* at 43. "The field of discretion of the trial

judge in these matters is very broad. Only in rare instances can it be ruled that there has been an abuse of discretion amounting to an error of law." *Id.* at 44, quoting from *Bresnahan* v. *Proman*, 312 Mass. 97, 101-102 (1942). The record in this case does not support such a ruling.

C. *Davis' Appeal.*

The jury returned a verdict of $100,000 in punitive damages for the plaintiff Davis in the case against Walent (No. 80-6216) for gross negligence in the entrustment of the motor vehicle by Walent to Baker. Walent's motion for judgment n.o.v. was allowed by the court, and Davis has appealed from that order.

As no one has argued to the contrary, we assume without deciding that count 3 of Davis' complaint states a claim of gross negligent entrustment (it appears, rather, to be based on a claim that Baker acted as the agent of Walent), and that G. L. c. 229, § 2, permits recovery of punitive damages for such an entrustment.

From the conduct set out in part A (1) *supra* (apart from the violation of G. L. c. 90, § 12), together with other conduct of Baker known to Walent, the jury could have found ordinary negligence. We are of opinion that that evidence was not sufficient to support a finding of gross negligence. We note that although there was evidence that Baker kept a supply of beer in Walent's cellar and that on occasions Walent served beer to Baker, there was no evidence that prior to the accident Baker had driven Walent's car while feeling the effect of any beer or, for that matter, that he had ever driven after drinking beer. Nor is there any evidence that he drove Walent's car improperly on the many occasions when he used it in 1977 and 1978. There was evidence of but one incident when Baker drove a car while under the influence of alcohol. That took place in California and resulted in the restriction of his license. The violation of G. L. c. 90, § 12, discussed in part A (1) was "some evidence of the defendant's negligence" (*Leone* v. *Doran*, 363 Mass. at 8), but that would not, even in combination with the other evidence, permit a finding of gross negligence. The motion for judgment n.o.v. was properly allowed.

Davis *v.* Walent.

The order allowing the motion for judgment notwithstanding the verdict is affirmed. The corrected judgment in case No. 80-6216, entered on March 1, 1982, is affirmed. The judgments in case No. 79-3961 are affirmed.

*So ordered.*