Cowin, J.
INTRODUCTION
The plaintiff Richard Seiden (“Richard”) has brought this action for wrongful death, negligence, gross negligence and breach of contract as a result of the death by suicide of his brother Frederick Seiden (“Fred”) at tire Village Haven Rest Home (“Village Haven”) located in Barnstable, Massachusetts where Fred was residing when he died. Defendants Ben Spadoro (“Spadoro”) and Janet Williams (“Williams”), each a fifty percent owner of Village Haven, have moved for summary judgment.
For the reasons stated below, the defendants Ben Spadoro and Janet Williams’ motion for summary judgment is DENIED on Counts 1 and VI for negligence and ALLOWED for Counts IV, VII, VIII, and IX for breach of contract and gross negligence.
BACKGROUND
The following uncontested facts are drawn from the submissions of the parties. The plaintiffs brother died on May 22, 1993, when he committed suicide while a resident at Village Haven. At that time, Spadoro was a fifty percent owner of this facility and also its administrator. Williams, the other fifty percent owner of Village Haven, was the “support services coordinator.”
Fred’s first psychiatric hospitalization occurred on April 1, 1984 when he was admitted to Cedars Sinai Medical Center in Los Angeles. At the time he was 48 years old, unemployed, and was admitted after he had taken an overdose of chloral hydrate. He was subsequently discharged on April 15, 1984.
Fred’s next hospitalization was in June of 1984 after Fred attempted suicide by jumping from the third story of a building. He was hospitalized at the Neuro-psychiatric Institute of Los Angeles. Fred was then hospitalized at the Albany Medical Center in the Department of Psychiatry (“Albany”) from September 16, 1984 until October 3, 1984.
After Fred was discharged, he moved to Illinois and worked in Chicago for approximately three and one half years. Fred was readmitted to Albany from June 3, 1989 until July 14, 1989 and was treated for depression, insomnia and suicidal thoughts. Again he was readmitted on November 4, 1989 and stayed until November 29, 1989. His discharge diagnosis stated that he was suffering from schizo-affective disorder, obsessive-compulsive disorder and narcissism.
Even though his therapist believed that Fred was doingwell, onFebruary23, 1990, Fred was readmitted to Albany after he rolled himself off a high bridge in what was clearly a suicide attempt. Fred was discharged on May 31,1990 to the Neurologic Treatment Center at the Greenery Rehabilitation and Skilled Nursing Care Facility (“the Greenery”) in Middleboro, Massachusetts. Fred was a patient there for the next three years until his discharge on April 23,1993 to the Village Haven Rest Home (“Village Haven”).[3] On April 23, 1993, the Physician’s Discharge Summary from the Greenery stated that: “any serious behavioral problems were resolved.”
On April 25, 1993, Fred sent a letter to his brother Richard in which he stated that his “relocation to the Cape" was “a nightmare” and that he felt “totally betrayed.” Fred continued:
The Village Haven Rest Home is a shambles of what was expected. I’m sleeping in a small room with two other men (one who sleeps in the same clothes he’s been wearing throughout the day), with a bathroom fit for animals. We share the bath with 3 other men in the adjacent room making it 6 men for one bathroom. It smells of urine on the floor and the shower is a hand held hose in a tub. I’m trying to be graphic and objective about my situation so you’ll understand how difficult it is for me to keep optimistic about the future here.
The food is just about etible (sic) and doesn't taste good at all ... By comparison the meals at the Greenery were gourmet, and the portions more than adequate . . .
There are 23 residents here, mostly down and out creatures who have let life pass them by ... As I write this my 2 roommates have come into the bedroom which makes for a very crowded situation. Surrounding this place is BOREDOM everywhere
Frankly, I’m in the wrong place and I don’t know how to get out.
Plaintiff submitted an affidavit of Dr. Ronald P. Winfield, a psychiatrist, stating that in his professional judgment the risk that Fred would attempt to commit suicide was or should have been “absolutely *340 and certainly” foreseeable to the caregivers at Village Haven.[4]
Plaintiff contends in his complaint that defendants Williams and Spadoro are each individually liable in Counts I, IV, VI, VII, VIII and IX for negligence, gross negligence and breach of contract.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving parly is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Id. at 17.
Plaintiff alleges in Count I that defendants violated their duty to supervise and monitor decedent’s activities and to take all reasonable steps to prevent decedent from committing suicide. In order to prevail on his negligence claim, plaintiff must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. Jorgensen v. Massachusetts Port Authority, 905 F.2d 515, 522 (1st Cir. 1990).
Caregivers owe a duty of care to an institutionalized patient such as the decedent which includes taking reasonable steps to prevent a suicide when it is a known or foreseeable risk. McNamara v. Honeyman, 406 Mass. 43, 55 (1989). Further, defendants, as corporate officers, are individually liable for torts in which they personally participated regardless of whether they were acting within the scope of their authority. Addis v. Steele, 38 Mass.App.Ct. 433, 439 (1995), quoting LaClair v. Silberline Mfg. Co., 379 Mass. 21, 29, 31 (1979).
Williams is a Support Services Coordinator at Village Haven. A “Support Services Coordinator” is defined as:
[A]n individual who has received a BA or BS degree in a human services field of study such as Psychology, Nursing or Social Work and is employed by a Resident Care Facility or a Community Support Facility to provide and coordinate care to Community Support Residents. The Coordinator is responsible for arranging and coordinating Support Services. Support Services is a term applied to a variety of services including health and mental health visits, educational and vocational services, as well as recreational services, which are intended to enhance the psychosocial and physical functioning of Community Support Residents.
105 CMR §150.001. Williams admitted in her deposition that she was aware of the decedent’s history of suicide attempts at the time of his admission when she read his patient referral form from the Greenery. Therefore, whether she took all reasonable steps necessary to prevent Fred’s suicide is a question for the jury to decide.
Clearly, whether Spadoro, as Administrator of Village Haven, acted unreasonably in failing to fulfill his duty to prevent Fred’s suicide is similarly a question for the jury. Spadoro by state regulation is responsible for providing good care to the residents at Village Haven. See 105 CMR §150.002(2). (The “administrator shall be jointly and severally responsible for . . . personnel practices and procedures that encourage good patient or resident care.”) It is a question of material fact whether Spadoro failed to comply with all applicable regulations in the area of patient comfort, safety and accommodations of those patients with a diagnosis of mental illness. See 105 CMR §150.002 (A)(2). Therefore, summary judgment is precluded on plaintiffs claim against Spadoro for negligence.
It is plaintiffs burden to establish a causal connection between the defendants’ alleged breach of duty and Fred’s suicide. This burden may be established by expert testimony that the injury sustained was more probably than not a result of the defendants’ negligence. Glicklich v. Spievack, 16 Mass.App.Ct. 488, 492 (1983). Plaintiff has submitted an affidavit containing such expert testimony. Further, the plaintiff need not prove that the defendants’ negligence was the sole cause of injury. As long as their conduct was a significant contributing factor to the injuries, the defendants are liable. Delicata v. Bourlesses, 9 Mass.App.Ct. 713, 720 (1980).
Plaintiff alleges in Count IV that the individual defendants breached their contractual duty to supervise and monitor Fred’s activities and to take all reasonable steps necessary to prevent him from committing suicide. Plaintiff has failed to produce any evidence showing the existence of any contract between the individual defendants and the decedent. See Canney v. New England Telephone and Telegraph Co., 353 Mass. 158, 164 (1967) (burden of proving the existence of a valid contract is upon the plaintiff). Any contract that exists is between Fred and the corporate provider. No facts are alleged that suggest the corporate veil should be pierced to reach the stockholders. See Gottlin v. Herzig, 40 Mass.App.Ct. 163, 167-168 (1996), citing My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618 (1968). Plaintiff asks this Court to disregard the corporate form because Spadoro and Williams each own half of the corporation and they control the daily operations of the rest home. Plaintiffs allegations, standing alone, are insufficient to pierce the corporate veil. Gottlin, 40 Mass.App.Ct. *341 at 168. See also Evans v. Multicon Construction Corp., 30 Mass.App.Ct. 728, 733 (1991). Therefore, summary judgment is appropriate for defendants on Count IV.
Plaintiff contends in Count VI that Spadoro and Williams are liable for negligence for allowing unsafe conditions to exist at Village Haven. See Mounsey v. Ellard, 363 Mass. 693, 710 (1973). The issue before this Court is whether defendants were liable for failure to provide adequate care or protective custody to an individual that defendants know or should have known was a suicide risk. McNamara, 406 Mass. at 49-52, 55-56 (1989).
As discussed above, Williams read about the decedent’s past suicide attempts at the time of his admittance to Village Haven. Nevertheless, both she and Spadoro allowed him to remain there even though Village Haven is not licensed to provide skilled or supportive “nursing care or other medically related services on a routine basis.” 105 CMR §150.001. Therefore, whether this admittance resulted in placing Fred in an unreasonably dangerous environment is a question of fact that precludes summary judgment.
Plaintiff contends in Count VII that the defendants were grossly negligent in their care of the decedent. Gross negligence “amounts to indifference to present legal duly and to utter forgetfulness of legal obligations so far as other persons may be affected.” Davis v. Walent, 16 Mass.App.Ct. 83, 92 (1983), quoting Altman v. Aronson, 231 Mass. 588, 591 (1919). However, gross negligence “falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.” Davis, 16 Mass.App.Ct. at 93.
Although I concur that summary judgment is not appropriate on plaintiffs claim of ordinary negligence, plaintiff cites no specific facts to support his allegation that defendants’ conduct rose to the level of reckless or gross negligence. Therefore, defendants are entitled to summary judgment on Count VII.
Plaintiff alleges in Counts VIII and IX of his complaint that defendants breached a contract and were negligent in obtaining certain pension benefits for Fred. Spadoro explained in his undisputed deposition testimony that when Fred took up residence at Village Haven, Spadoro unilaterally sought to obtain certain benefits to which Fred might be entitled as a former radio discjockey. Spadoro investigated and discovered that Fred was entitled to benefits and assisted Fred in obtaining the necessary documentation for filing the claim. Fred’s death, however, prevented his obtaining those benefits.
Plaintiff has presented no evidence of a written or oral contract between the individual defendants and the decedent to procure pension benefits. Furthermore, plaintiffs negligence claim fails because even if the defendants had assumed a duty to help Fred get his pension funds, there is no evidence presented that defendants breached that duty. On the contrary, the evidence shows that Spadoro was instrumental in getting the documentation necessary for the claim to be processed. Therefore, defendants are entitled to summary judgment on Counts VIII and IX.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants Ben Spadoro and Janet Williams’ motion for summary judgment be DENIED on Counts I and VI for negligence and ALLOWED for Counts IV, VII, VIII, and IX for breach of contract and gross negligence.

Village Haven is licensed to operate as a Long Term Care Facility, specifically a “Level IV” or Resident Care Facility. Resident Care Facilities are not licensed to provide skilled or supportive “nursing care or other medically related services on a routine basis.” 105 CMR §150.001. Only under very specific circumstances, involving waivers, can a Resident Care Facility provide regular mental health, psychiatric, or even nursing care. 105 CMR §150.003(D)(2); 105 CMR §150.020.

Plaintiff also claims that the individual defendants have been on notice of alleged deficiencies observed as a result of investigations by the Department of Public Health (DPH) as early as 1992. Plaintiff submitted a letter sent by DPH on May 13, 1993 to Spadoro as Administrator of Village Haven which stated that even though Village Haven had “made substantial progress toward completing correction,” the result of a follow up visit on September 30, 1992, showed that “some deficiencies remain uncorrected ...” Williams stated in her deposition that she was aware of these allegations by DPH. Spadoro stated in his deposition that he never saw the original report sent to him by DPH. However, because the reports submitted by the plaintiff are hearsay and unsubstantiated by appropriate affidavits, they are not admissible evidence before this Court.