Curran, Dennis J., J.
INTRODUCTION
The core of this lawsuit is a claim for medical malpractice arising from the medical treatment and care of James Jah while he was incarcerated at the Suffolk Couniy House of Corrections.
Specifically, Mr. Jah’s claims emanate from the medical treatment he received from Dr. Colleen Collins, the medical director for the House of Corrections and an employee of Naphcare, Inc., the correctional facility’s independent medical contractor. Mr. Jah alleges that Sheriff Cabral, the Sheriffs Department and the Commonwealth negligently selected and supervised Naphcare, Inc., and Dr. Collins “whose substandard care had previously caused a fatal delay in the medical transfer of another HOC inmate.”[2] Sheriff Cabral, the Sheriffs Department, and the Commonwealth have moved to dismiss all claims against them.
For the following reasons, the defendants’ motion is ALLOWED in part and DENIED in part.
I. BACKGROUND
The events underlying this lawsuit began on July 27, 2012, when a member of the correctional infirmary staff prescribed Bactrim to Mr. Jah for the purpose of treating an infected wound on his right elbow. Bactrim is a strong antibiotic that is known to pose a “high risk” for inducing Stevens-Johnson Syndrome (SJS) and/or Toxic Epidural Necrolysis (TEN), both ofwhich require immediate hospitalization in a burn unit.[3]
Within one or two days of receiving his first dose of Bactrim, Mr. Jah began to suffer known symptoms of SJS and TEN. His condition worsened, but Dr. Collins and her medical staff gave him additional doses of Bactrim. On August 1, 2012, Mr. Jah was admitted to the infirmary and treated by Dr. Collins after he collapsed on the floor about 42 hours after Dr. Collins and/or the infirmary staff first became aware of his symptoms. Dr. Collins described Mr. Jah’s condition as a reaction to Bactrim. But instead of transferring Mr. Jah to a hospital burn unit, Dr. Collins monitored him in the infirmary where his condition continued to decline. He was eventually transferred to the Boston Medical Center, and then to Massachusetts General Hospital’s bum unit.
Sheriff Cabral, the Sheriffs Department and the Commonwealth were not direct participants in these events; *585 instead, Mr. Jah claims that they failed to exercise due care in the retention and supervision of Naphcare, Inc. and Dr. Collins after Dr. Collins’ substandard care previously caused a fatal delay in the medical treatment of another patient. Mr. Jah also alleges that the Suffolk defendants were deliberately indifferent to his serious medical needs in violation of 42 U.S.C. §1983, and they were grossly negligent. The Suffolk defendants have moved to dismiss all of these claims.
II. DISCUSSION
A. STANDARD OF REVIEW
A motion to dismiss for failure to state a claim permits “prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiffs claim is legally insufficient.” Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 748 (2006). In evaluating the sufficiency of a complaint under Mass.R.Civ.P. 12(b)(6), the court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn from them in the plaintiff’s favor. See Sisson v. Lhowe, 460 Mass. 705, 707 (2011); Eyal v. Helen Broad Corp., 411 Mass. 426, 429 (1991). A plaintiff’s obligation to provide the grounds of relief requires more than labels and conclusions. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (citation omitted). Factual allegations must be enough to raise the right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007).
B. 42 U.S.C. §1983 CLAIMS
Mr. Jah does not now dispute that his section 1983 claims against the Commonwealth, the Sheriffs Department, and Sheriff Cabral in her official capacity must be dismissed. Indeed, section 1983 only offers a remedy against “person[s]” who violate a claimant’s civil rights. 42 U.S.C. §1983. The United States Supreme Court has held that states and state employees are not “persons” within the meaning of section 1983, and thus, cannot be sued in their official capacity. Will v. Michigan Dep’t State Police, 491 U.S. 58, 71 (1989); contra Hafer v. Melo, 502 U.S. 21, 23 (1991) (“[S]tate officials sued in their individual capacities are ‘persons’ for purposes of §1983”).
Mr. Jah, however, contends that he has stated a plausible claim under section 1983 against Sheriff Cabral in her personal capacity. This court does not agree.
Sheriff Cabral was not a direct participant in Mr. Jah’s treatment; rather, Mr. Jah’s section 1983 claim is based . on a theory of “supervisory liability.” Supervisory liability can arise “if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.” Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). “Deliberate indifference is a stringent standard of fault, requiring proof that a [state] actor disregarded a known or obvious consequence of his action.” Clancy v. McCabe, 441 Mass. 311, 318 (2004), quoting County Comm’rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997).
Respondeat superior is not an available theory of supervisory liability under section 1983; instead, liability must be based on the supervisor’s own acts or omissions. See Whiffield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). The supervisor must have condoned or tactically authorized her subordinate’s unconstitutional conduct. Id.
Mr. Jah provided only one factual allegation to meet the stringent standard of “deliberate indifference”: Sheriff Cabral allowed Dr. Collins to be retained by Naphcare, Inc. even though Dr. Collins’s “substandard care had previously caused a fatal delay in the medical transfer of another HOC inmate.” Thus, Mr. Jah alleges that Sheriff Cabral was on notice of the risk posed by Dr. Collins and by failing to mitigate or eliminate that risk, she was deliberately indifferent to future harm posed to Mr. Jah.
The complaint is completely devoid of any detail surrounding this prior incident. It alleges no facts to demonstrate that Sheriff Cabral failed to respond adequately to Dr. Collins’ prior substandard treatment. See Farmer v. Brennan, 511 U.S. 825, 844 (1994) (even if prison officials are aware of risk, they cannot be deliberately indifferent if they responded reasonably to risk, even if the harm was ultimately not avoided). Standing alone, it surely does not show that Sheriff Cabral made a conscious, deliberate choice to “overlook [ ] a clear risk of future unlawful action.” See Camilo-Robles, 175 F.3d at 44. Even if Sheriff Cabral was on notice of the prior incident, there is no factual support for the inference that she condoned Dr. Collins’s alleged substandard treatment of Mr. Jah. See Whitfield, 431 F.3d at 14.
Sheriff Cabral may only be held to account for her own acts or omissions. See id. The leap from Dr. Collins’s substandard care on one prior occasion to a claim that Sheriff Ms. Cabral violated Mr. Jah’s civil rights is too great for this court to make. The claim for relief under section 1983 is speculative.
At this procedural stage, Mr. Jah is required to disclose sufficient factual allegations in the four comers of his complaint to support a plausible claim. When the Supreme Judicial Court adopted a more stringent pleading standard in 2008, it did so for the veiy reason that “a wholly conclusoiy statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some ‘set of [undisclosed] facts’ to support recovery.” Iannacchino, 451 Mass. at 636, citing Bell Atl. Corp., 550 U.S. at 561-65 (retiring the “no set of facts” standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
Accordingly, Mr. Jah’s section 1983 claims against the Sheriffs Department, the Commonwealth, and Sheriff Cabral in her official and personal capacity must be dismissed.
C.NEGLIGENCE CLAIMS
Mr. Jah also asserts the following two claims of negligence against Sheriff Cabral, the Sheriffs Department, and the Commonwealth: 1) negligent selec *586 tion/supervision of Naphcare, Inc. and Dr. Collins; and 2) gross negligence.
The defendants argue, and Mr. Jah does not now dispute, that both negligence claims against Sheriff Cabral must be dismissed. The Massachusetts Tort Claims Act, which is the exclusive remedy for negligence claims against public employers and employees, provides that public employees acting within the scope of their employment are not liable for their negligent acts.[4] G.L.c. 258, §2. The Act also immunizes public employees from claims of gross negligence. See McNamara v. Honeyman, 406 Mass. 43, 46 (1989) (“[W]e conclude that a public employee is immune from a claim arising out of gross negligence ... under [G.L.c. 258], §2”). Accordingly, both negligence claims against Sheriff Cabral are dismissed.
In addition, the court finds that the gross negligence claims against the Sheriffs Department and the Commonwealth must also be dismissed. Gross negligence is “substantially and appreciably higher in magnitude than ordinary negligence . . . [i]t amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected.” Davis v. Walent, 16 Mass.App.Ct. 83, 92 (1983), quoting Altman v. Aronson, 231 Mass. 588, 591 (1919). It “is very great negligence, or the absence of slight diligence, or the want of even scant care ... it is a heedless and palpable violation of legal duty respecting the rights of others.” Zavras v. Capeway Rovers Motorcycle Club, 44 Mass.App.Ct. 17, 20 n.4 (1997), citing Altman, 231 Mass. at 591-92.
As with Mr. Jah’s claim for supervisory liability, this court is presented with only one fact to support a claim of gross negligence against the Commonwealth and the Sheriffs Department: that they were responsible for the selection, hiring and supervision of Naphcare, Inc. and they faffed to exercise due care when they retained Dr. Collins after her care caused a fatal delay in the medical treatment of another patient. This is simply not enough to plausibly state that the defendants were reckless and/or grossly negligent.
All is not lost for Mr. Jah with respect to the moving defendants. While the complaint does not contain a factual basis for the higher degree of culpability required for gross negligence, it is sufficient to state a plausible claim for negligent selection/supervision against the Sheriffs Department and the Commonwealth. Under this theory, an employer may be subj ect to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor. Restatement (Second) of Torts §411. The tort of negligent selection of an independent contractor appears to be a viable claim in Massachusetts, although there has been little discussion of it. See e.g., Wright v. Kelleher, 2008 Mass.Super. LEXIS 323 at *11-12 (Mass.Super.Ct. 2008) (Agnes, J.) [24 Conn. L. Rptr. 495]. In contrast to the standards of deliberate indifference and gross negligence, the selection of an independent contractor is measured by ordinary “reasonableness.”
The fact that Dr. Collins previously caused a fatal delay in the medical transfer of another inmate, if accepted as true, supports the inference that either the Suffolk defendants knew of Dr. Collin’s prior substandard care of an inmate, or should have known and investigated it. While this alone was not enough to show' that Sheriff Cabral was “deliberately indifferent” for purposes of a section 1983 claim, it is sufficient to state a plausible claim for negligence.[5] The reality is that inmates lose the ability to choose their own medical provider once they pass through that steel prison grate, and consequently, are wholly dependent on the state for proper medical treatment. Here, the Suffolk defendants owe a duly to inmates to ensure that they receive proper care and medical treatment. See Estelle v. Gamble, 328 U.S. 97, 103 (1976). Implicit in this duly is the obligation to select and supervise appropriate and qualified persons to administer such treatment.
The Suffolk defendants argue that Mr. Jah’s complaint should be dismissed because it does not allege that they maintained control over Naphcare, Inc.’s operations. It is sufficient, however, that the complaint states the defendants were responsible for the selection, hiring and supervision of Naphcare and Dr. Collins. The extent of their control can be developed through discovery. In any event, control in cases involving Restatement (Second) of Torts §411 is ordinarily a factual issue to be resolved by the jury. McNamara v. Massachusetts Port Auth., 30 Mass.App.Ct. 716, 718 n.3 (1991).
ORDER
For these reasons, the defendants’ motion is ALLOWED as to the section 1983 claims against the Suffolk defendants, the gross negligence claims against the Suffolk defendants, and the negligent selection/supervision claim against Sheriff Cabral.
The defendants’ motion is DENIED as to Mr. Jah’s claim of negligent selection/supervision against the Suffolk Counly Sheriffs Department and the Commonwealth.

 Mr. Jah also alleges gross negligence and civil rights violations of 42 U.S.C. §1983 against the defendants, which will be discussed in greater detail. Naphcare, Inc. and Dr. Collins are not parties to the present motion to dismiss; thus, where the court refers to the “Suffolk defendants” or “defendants” it is referring to the moving defendants: Sheriff Cabral, the Sheriffs Department, and the Commonwealth.

 These are potentially fatal conditions that involve des-quamation and skin sloughing.

 Mr. Jah rightfully does not argue that the selection and supervision of Naphcare, Inc. and Dr. Collins was outside the scope of Ms. Cabral’s employment.

 Indeed, “[deliberate indifference is a state-of-mind requirement that goes beyond negligence." Farmer, 511 U.S. at 834, 837.