ADA NUNEZ & another,[1] administratrices,[2] *vs.* A&M RENTALS, INC.[3]

No. 02-P-1406.

Suffolk. January 5, 2004. - February 14, 2005.

Present: BECK, GRASSO, & COWIN, JJ.

*Negligence,* Motor vehicle, Duty to prevent harm, Wrongful death. *Wrongful Death. Motor Vehicle,* Entrustment. *Statute,* Construction.

In a wrongful death action brought against a car rental company (defendant), in which the plaintiffs, the mother and companion of the decedent, claimed that the defendant was negligent in renting a car to a driver who, while driving with a suspended license, caused the decedent's death, the trial court judge did not err in granting the defendant's motion for summary judgment, where the plaintiffs failed, as matter of law, to prove that the defendant had knowledge of any incompetence or unfitness on the part of the driver such as would support a claim for common-law negligent entrustment [22-23]; where the defendant fulfilled its statutory duty under G. L. c. 90, § 32C, when the driver produced a duly issued and facially valid license to the defendant in order to complete the car rental transaction, and where the defendant owed no further duty to the decedent under G. L. c. 90, § 12 [23-25]; and where the defendant had no other duty to the decedent to verify the status of the driver's license [25-26].

CIVIL ACTION commenced in the Superior Court Department on September 20, 1999.

The case was heard by *Diane M. Kottmyer,* J., on a motion for summary judgment.

*Robert M. Daniszewski* for the plaintiffs.

*Mary Alice McLaughlin* for the defendant.

BECK, J. This is a wrongful death and pain and suffering action against a car rental company. The plaintiffs, the mother and

---

[1]Miriam DeJesus.

[2]Of the estate of Jose Valentin.

[3]John Patten, named as a defendant in the complaint, is not a party to this appeal.

the companion of Jose Valentin, claim that the defendant company, A&M Rentals, Inc. (A&M), was negligent in renting a car to the driver who caused Valentin's death. The plaintiffs appeal from a Superior Court judge's order allowing A&M's motion for summary judgment.

*Factual and procedural background.* On June 12, 1999, John Patten rented a 1999 Chevrolet Corvette from A&M. At the time of the rental, Patten showed A&M a facially valid Massachusetts driver's license. Patten had rented cars from the defendant "approximately" six times before without incident.

About four hours after renting the car, Patten collided head on with the 1998 Ford Escort Jose Valentin was driving. Valentin was killed; his passenger Walter Valentin (who is not a party to this appeal) was seriously injured. In the investigation that followed the crash, an accident reconstruction expert estimated that Patten was driving one hundred miles an hour on the wrong side of the street at the time of impact. The expert also discovered that although Patten had presented a facially valid license to A&M, in fact Patten's license had been suspended in 1997 for Patten's failure to pay an eighty dollar fine. The fine had been assessed for driving forty-three miles an hour in a thirty mile an hour zone. (The suspension was not part of the disposition of the speeding violation. Had Patten paid the fine in a timely manner, his license would not have been suspended.) At deposition, Patten claimed to be unaware of the ticket. When Patten paid the fine after the accident, his license was immediately reinstated.

The plaintiffs filed suit against A&M claiming, among other things, that the defendant breached its duty to the decedent by leasing the car to Patten without verifying Patten's driving record. The plaintiffs contended that commercially available systems and procedures, such as TML Information Services' "DriverCheck," would have allowed A&M to do so.

A&M responded with a motion for summary judgment asserting (1) that A&M had no duty to verify that Patten's license had not been suspended; and (2) that any negligence on the part of A&M was not the legal cause of the accident. After production of appropriate documents and a hearing, a Superior Court judge allowed the defendant's motion.

*Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). We will uphold an order granting or denying summary judgment "if the trial judge ruled on undisputed material facts and [her] ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992). On appeal we may affirm a motion for summary judgment based upon any ground in the record, even if it differs from the reasoning of the trial judge. *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989).

*Plaintiffs' issues on appeal.* On appeal the plaintiffs contend that the defendant caused the death of the plaintiffs' decedent when it (1) negligently entrusted the Corvette to Patten; (2) breached its statutory duty under G. L. c. 90, §§ 12 and 32C; and (3) negligently failed to verify that Patten had a valid driver's license. Because an essential element of each of these claims was unlikely to be forthcoming at trial, we affirm the judge's order allowing summary judgment for the defendant.

1. *Common-law negligent entrustment.* In order to prevail on a claim for negligent entrustment in the Commonwealth, the plaintiff must show that "(1) the defendant entrusted a vehicle to an incompetent or unfit person whose incompetence or unfitness was the cause of the [victim's] injuries; (2) [the defendant] gave specific or general permission to the operator to drive the [vehicle]; and (3) the defendant had actual knowledge of the incompetence or unfitness of the operator to drive the vehicle." *Picard* v. *Thomas*, 60 Mass. App. Ct. 362, 369 (2004), citing *Mitchell* v. *Hastings & Koch Enterprises, Inc.*, 38 Mass. App. Ct. 271, 276-277 (1995). Compare Restatement (Second) of Torts § 390 (1965) (permitting a finding of negligent entrustment on a showing that the entrustor had reason to know the entrustee was incompetent).

In this case, the Superior Court judge determined that the plaintiffs failed, as matter of law, to prove that the defendant had knowledge of any incompetence or unfitness on the part of

Patten. In fact, Patten had rented vehicles from the defendant on several prior occasions without incident. The defendant was entitled to summary judgment on the claim for common-law negligent entrustment.

2. *General Laws c. 90, §§ 12 and 32C.* As an alternative theory to common-law negligent entrustment, relying on *Mitchell* v. *Hastings & Koch Enterprises, Inc.*, *supra*, the plaintiffs argue, as they did below, that the defendant violated G. L. c. 90, § 12, and that such violation was evidence of negligence sufficient to warrant sending their claim to the jury. The Superior Court judge rejected this argument. Pointing out that "[s]ection 32C . . . specifically addresses the [duty] of car rental agencies," she determined that § 32C rather than § 12 applies to this case.

General Laws c. 90, § 12, was originally enacted in 1903. The language at issue was added in 1911 and has not been further amended since then despite the significant increase in motor vehicle traffic. It provides:

> "No person shall allow a motor vehicle owned by him or under his control to be operated by any person who has no legal right so to do, or in violation of this chapter."

St. 1911, c. 37. (Driving with a suspended license is a violation of G. L. c. 90, § 10.)

Section 32C was originally adopted in 1934. That version regulated the method of measuring the mileage for rental cars where the lessee paid for the car on a per mile basis. See St. 1934, c. 209, § 1; St. 1966, c. 222, § 3. The sentence relevant to this case was added in 1971. See St. 1971, c. 117. It provides that

> "No lessor shall lease any motor vehicle or trailer until the lessee shows that he or his authorized operator is the holder of a duly issued license to operate the type of motor vehicle or trailer which is being leased."

Neither statute — either § 12 or § 32C — makes reference to the other on its face or in its legislative history.

In deciding this case, the judge relied on the principle of statutory construction that "when two statutes . . . conflict . . .

the more specific provision, particularly where it has been enacted subsequent to a more general rule, applies over the general rule." *Doe* v. *Attorney General (No. 1)*, 425 Mass. 210, 215 (1997). See 2B Singer, Sutherland Statutory Construction § 51.02, at 187 (6th ed. 2000).

While we are not necessarily persuaded that § 12 and § 32C must be read as conflicting, we think the judge was correct in concluding that § 32C controls the case before us. We look first at the language of the statute in the context of when it was drafted and then consider the practical implications of requiring rental car companies to comply with one or both statutory sections. Section 12 was enacted when the automobile industry was in its infancy and therefore represents a very early attempt at regulation by licensing. See *Chipman* v. *Massachusetts Bay Transp. Authy.*, 366 Mass. 253, 256 (1974), quoting from *Commonwealth* v. *Welosky*, 276 Mass. 398, 401 (1931), cert. denied, 284 U.S. 684 (1932). ("Statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times [and] prior legislation").

The relevant portion of § 32C, on the other hand, was adopted in 1971, at a time when the Legislature was well aware of the importance of automobiles and the role of the rental car industry in the Commonwealth. Although the license requirement was added as an amendment to the 1934 version of § 32C, there appears to be no relationship between the 1934 version and the 1971 amendment, other than that they both apply to lessors of motor vehicles. Therefore, when originally adopting § 32C in 1934, there was no reason for the Legislature to address any potential conflict with § 12 because none would have existed given the language used. As we read the 1971 license requirement in § 32C, it appears to have been intended to be a new legal requirement governing rental car companies.

The caption of § 32C, as compared with § 12, supports this approach. The title of the 1971 amendment to § 32C was "An act prohibiting auto rental agencies from leasing a motor vehicle or trailer to persons who are not licensed to operate such a motor vehicle or trailer." St. 1971, c. 117. See *Botello* v. *Mas-*

*sachusetts Port Authy.*, 47 Mass. App. Ct. 788, 790 (1999) ("we [] look to the caption of [the amendment] . . . for enlightenment as to the act's purpose"). At no point in its history does § 12 mention rental cars in its text or its caption. See *Commonwealth* v. *Russ R.*, 433 Mass. 515, 520 (2001) ("Legislature is presumed to be aware of existing statutes when it . . . enacts a new one").

The practical effects of requiring rental car companies to comply with both § 32C and § 12 also supports our conclusion that § 12 does not apply. Section 32C's requirement focuses on the point when a lessee must produce a license that proves he is an authorized driver in order to complete the lease transaction. If § 12 were to apply to rental cars in the same way, rental companies would be responsible for monitoring the lessee and being able to demonstrate continuously that the lessee was properly licensed. Without further regulation such a system likely would be sufficiently onerous as to result in limited service. We therefore conclude that A&M fulfilled its duty when Patten showed it a duly issued license pursuant to § 32C. It owed the decedent no further duty under § 12.

3. *Duty to verify a valid license.* The plaintiffs also assert that the defendant had a duty to the decedent to verify the status of Patten's license. In support of this argument, the plaintiffs claim that "a simple technology was commercially available to A&M that would have enabled A&M to verify [the status of Patten's license] and driving history through a direct on-line computer connection with the Registry of Motor Vehicles." Whether there is a legal duty is a question of law. *Vaughn* v. *Eastern Edison Co.*, 48 Mass. App. Ct. 225, 226 (1999), citing *Bergendahl* v. *Massachusetts Elec. Co.*, 45 Mass. App. Ct. 715, 722-723 (1998), cert. denied, 528 U.S. 929 (1999). We conclude that the Commonwealth does not require license verification beyond G. L. c. 90, § 32C, given that the Legislature has chosen not to speak on the issue. See *Lindstrom* v. *Hertz Corp.*, 81 Cal. App. 4th 644, 649-651 (2000) (where state statute requires rental car agencies to determine whether a potential customer possesses a valid driver's license, court declined to extend duty to require them to determine whether customers are familiar with the rules of the road, noting "[i]t is for the Legislature, not the courts, to

determine whether tort liability should be based on an individual's membership in a class"); *Grimmett* v. *Burke*, 21 Kan. App. 2d 638, 650 (1995) (nothing in the record to suggest that the car dealership should have inquired of the Kansas Department of Motor Vehicles); *McCarroll* v. *Kinchen*, 526 So. 2d 484, 489 (La. App. 1988) ("If Louisiana is to require testing of prospective vehicle lessees, we believe it within the province of the legislature to so decree and set the standards"). See also *Suiter* v. *Epperson*, 6 Neb. App. 83, 102 (1997).

*Conclusion.* For the reasons set out above, the judge's order allowing the defendant's motion for summary judgment is affirmed.

*So ordered.*