Gus Kassis, administrator,[1] *vs.* Lease and Rental
Management Corporation & another.[2]

No. 10-P-130.

Essex. November 2, 2010. - July 14, 2011.

Present: Rapoza, C.J., Trainor, & Wolohojian, JJ.

*Motor Vehicle,* Lease agreement. *Negligence,* Motor vehicle. *Bailment,* Motor
vehicle. *Practice, Civil,* New trial, Instructions to jury.

In a civil action arising from injuries to the plaintiff's decedent caused by a
third party while driving a vehicle, leased from the defendant, that had a
mechanical defect that arose after the beginning of the lease, a Superior
Court judge did not abuse his discretion in ordering a new trial, where the
judge incorrectly instructed the jury that the defendant had a common-law
duty to assure the continuing safety of the vehicle leased to the third party,
and where the erroneous instruction prejudiced the defendant. [787-790]

Civil action commenced in the Superior Court Department on
April 1, 2004.

The case was tried before *Thomas R. Murtagh,* J., and a mo-
tion for judgment notwithstanding the verdict or for a new trial
was heard by him; after allowance of the motion for a new trial,
the case was tried before *Mary-Lou Rup,* J.

*Albert L. Farrah, Jr.,* for the plaintiff.

*John P. Knight* (*Robert A. Hurstak* with him) for Lease and
Rental Management Corporation.

Wolohojian, J. At issue in this appeal is whether a long-term
lessor of a vehicle owes a duty of care to a person who is in-
jured as a result of a mechanical defect arising after the begin-
ning of the lease. We conclude that, under the law of bailment,
no such duty exists. Accordingly, we affirm the trial judge's
allowance of the defendant's motion for a new trial, as well as
the judgment entered in the second trial.

---

[1]Of the estate of Dib Kassis.

[2]Angela Marie Tropeano.

*Background.* The plaintiff brought this suit as administrator of Dib Kassis, who was struck by a car driven by Angela Marie Tropeano. Tropeano leased the car under a four-year lease from the defendant, Lease and Rental Management Corporation (L & R).[3] At the time the lease was entered into, the car had been inspected, and it bore an inspection sticker valid through September 30, 2003.[4] By every indication, the vehicle was in safe and proper working order[5] and was in compliance with all applicable statutes and regulations at the time it was leased to Tropeano.

The lease agreement expressly placed on Tropeano a number of duties and responsibilities regarding the maintenance and upkeep of the vehicle. The lease required Tropeano to maintain the vehicle in good working condition and to have mechanical problems repaired at her own expense. Paragraph "M" of the agreement ("Vehicle Upkeep and Alterations") provided:

> "I [Tropeano] will at my expense, have the vehicle serviced in accordance with the manufacturer's recommendations, maintain the vehicle in good working order and condition, and have all necessary repairs made."

In addition, paragraph "C" of the agreement ("Vehicle Warranties") provided:

> "I [Tropeano] understand that I have the entire risk during the lease term as to the vehicle's quality and performance and that if I have a mechanical problem with the vehicle I am required to have the problem fixed and pay all repair and service costs to the extent they are not covered by any manufacturer's new car warranty assigned to me."

---

[3]L & R is in the business of leasing, selling, and financing motor vehicles, and it operates in at least forty States. In 2002, it owned approximately 1,000 leased vehicles and financed approximately 18,000 retail loans. Tropeano, like eighty to ninety percent of L & R's retail borrowers and lessees, was a "subprime" borrower posing a high credit risk. At the initiation of the lease, Tropeano had no savings or checking account and no credit cards, and she was in default on her student loans. Almost immediately after taking possession of the vehicle, Tropeano began to fall behind in making her lease payments.

[4]See G. L. c. 90, § 7A; 540 Code Mass. Regs. §§ 4.01 et seq. (1999).

[5]Shortly before Tropeano took possession, L & R had taken the vehicle to a mechanic to conduct repairs and a safety check.

Tropeano also agreed to carry minimum insurance coverage naming L & R as an additional insured. L & R, for its part, reserved the right to inspect the vehicle at any reasonable time.[6]

On September 30, 2003, the annual inspection sticker on the vehicle expired, and Tropeano did not take the car to be inspected.[7] Around early January, 2004, Tropeano began to notice problems with the vehicle's brakes, and she had them repaired that same month. The uncontested expert testimony at trial was that the repair was faulty, resulting in a substantial leak of brake fluid.[8] There was also uncontested expert testimony that a standard annual inspection — had one been conducted after the repair — would have disclosed the leak.

The accident was caused by a brake failure the following month (fifteen months into the lease). Tropeano was driving her children to daycare, unaware of any continuing problem with the brakes. She was unable to stop the car before it struck and fatally injured Kassis.

The plaintiff sued Tropeano and L & R. This appeal concerns only the negligence claim asserted against L & R, the liability portion of which was twice tried to a jury. In the first trial, the judge, relying on Instruction 2.2.5 of the Massachusetts Superior Court Civil Practice Jury Instructions (Mass. Cont. Legal Educ. 2d ed. 2008),[9] drafted a jury verdict slip that *required* the jury to find whether L & R had:

"a duty of care to take the reasonable steps necessary to

---

[6]Paragraph "M" of the agreement also provided:

"If you [L & R] request, you may inspect the vehicle at any reasonable time. Unless I [Tropeano] obtain your written consent beforehand, I will not make any changes to the vehicle . . . which would decrease its economic value or functional utility. All changes made to the vehicle which cannot be removed or remodified without decreasing its economic value or functional utility shall become fixtures of the vehicle and your property when such changes are originally made."

[7]There was evidence that Tropeano did not want to pay for an inspection.

[8]After researching the repair options, Tropeano took the car to be repaired at the least expensive one.

[9]Instruction 2.2.5 of the Massachusetts Superior Court Civil Practice Jury Instructions (Mass. Cont. Legal Educ. 2d ed. 2008) provides, "The owner of a motor vehicle owes other travelers the duty to exercise reasonable care to keep his or her vehicle in safe mechanical condition."

assure that the Neon leased to Angela Tropeano and oper-
ated by her at the time of the accident was in good repair
and capable of being operated safely and without posing
an unreasonable danger to others."

The jury found that L & R owed this duty and that the duty had
been breached. The jury awarded damages in the amount of
$1,124,084.[10]

L & R timely filed a motion for new trial, arguing that, as
lessor of the vehicle, it had no duty to keep the vehicle in safe
mechanical condition at the time of the accident and that the
finding was, therefore, in error. The judge agreed, concluding
that the long-term vehicle lease was a form of bailment. As
bailor, L & R was not liable for harm to third parties caused by
a defect in the bailed property unless L & R had actual knowl-
edge of the defect at the time of the accident or had agreed to
maintain the vehicle after its delivery to Tropeano. Because
neither of those two conditions existed here, the judge concluded
that the instruction was both erroneous and prejudicial. The
judge also concluded that a new trial (rather than judgment
notwithstanding the verdict) was in order because L & R's obli-
gation to have the car annually inspected, G. L. c. 90, § 7A;
540 Code Mass. Regs. § 4.03 (1999), imposed a duty on L & R
toward Kassis, although this duty was materially different from
the one on which the jury were instructed in the first trial. In
the second trial, the jury found that L & R owed no duty to
Kassis. A judgment entered in favor of L & R. The plaintiff
now appeals from that judgment and argues that the allowance
of L & R's motion for new trial was error.[11]

*Discussion.* "The decision to grant or deny a motion for a new
trial rests in the discretion of the trial judge, and an appellate
court will not vacate such an order unless the judge has abused
that discretion." *W. Oliver Tripp Co.* v. *American Hoechst Corp.,*

---

[10]The jury found that (1) Tropeano was negligent in connection with the ac-
cident; and (2) L & R lacked the authority and the means to control Tropeano's
operation or maintenance of the automobile at the time of the accident. The lat-
ter finding precluded vicarious liability for L & R. See *Thompson* v. *Auto Credit
Rehabilitation Corp.,* 56 Mass. App. Ct. 1, 5 (2002).

[11]The plaintiff's earlier request for interlocutory relief was denied by a
single justice of this court.

34 Mass. App. Ct. 744, 748 (1993). A judge acts within his discretionary authority in granting a new trial when he does so upon a "proper determination that his instructions to the jury were prejudicially incorrect." *Galvin* v. *Welsh Mfg. Co.*, 382 Mass. 340, 343 (1981). It is "sufficient to justify a trial judge's determination to grant a new trial for defects in his jury instructions, if an appellate court would have reversed the judgment had those instructions been properly challenged on appeal." *Id.* at 345. Our inquiry, accordingly, is whether the original instructions were erroneous as a matter of law and, if so, whether the result in the first trial might have been different absent the error. *Masingill* v. *EMC Corp.*, 449 Mass. 532, 540 n.20 (2007).

As a general principle, the owner of a vehicle owes a duty to exercise reasonable care to keep the vehicle in safe mechanical condition. *Facteau* v. *Gould*, 310 Mass. 105, 106-107 (1941). *Pellegatti* v. *Pellegatti*, 345 Mass. 591, 593-594 (1963). *Carney* v. *Bereault*, 348 Mass. 502, 505 (1965). However, where (as here) the owner has leased the vehicle to another under a long-term lease, we think the owner's obligations are controlled by the common law of bailment to the extent they are not otherwise governed by the terms of the lease or by statute.[12] See *Remy* v. *MacDonald*, 440 Mass. 675, 677 (2004) ("Whether a duty exists is a question of common law, to be determined by reference to existing social values and customs and appropriate social policy" [quotation and citation omitted]). "A bailment is established by 'delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be.' " *King* v. *Trustees of Boston Univ.*, 420 Mass. 52, 59 (1995), quoting 9 S. Williston, Contracts § 1030 (3d ed. 1967).

At common law, a bailor's only duties are to deliver nondefective chattels, see *Mitchell* v. *Lonergan*, 285 Mass. 266, 269 (1934), and to deliver them to bailees capable of using them safely.[13] *Leone* v. *Doran*, 363 Mass. 1, 11, 13 n.3, vacated in

---

[12]For example, the provisions of the Uniform Commercial Code, G. L. c. 106, §§ 2A-101 et seq., and other statutory provisions.

[13]To establish a claim for negligent entrustment, a plaintiff must establish

part, 363 Mass. 886 (1973), and *S.C.,* 369 Mass. 956 (1975). Upon delivery of the bailed property, the bailor relinquishes possession and control to the bailee, together with responsibility for the property's continuing safety. Absent contract, statute, or an agency relationship, a bailor of property is not liable to third persons injured as a result of a bailee's negligent use or operation of the bailed property. See *Strogoff* v. *Motor Sales Co.,* 302 Mass. 345, 347 (1939); *Rich* v. *Finley,* 325 Mass. 99, 107 (1949). A bailor has no common-law duty to inspect or repair bailed property, nor is a bailor liable for injuries resulting from a defect arising after the property's delivery to the bailee. See *Corlett* v. *Hi Lo Corp.,* 350 Mass. 769, 769 (1966). See also *Standard Oil Co.* v. *Foster,* 280 F.2d 912, 914-915 (5th Cir. 1960); *Rigby* v. *Suburban Rendco, Inc.,* 548 F. Supp. 202, 206 (D. Del. 1982); 8A Am. Jur. 2d Bailments § 180 (2009). However, if a bailor agrees to retain control over the bailed property, such as by an agreement to repair, maintain, or inspect, he or she may on that basis be held liable for later-arising defects. *Standard Oil Co., supra* at 914. *Rigby, supra* at 206. See 8A Am. Jur. 2d Bailments § 180.

Applying these principles to the case at hand, we conclude — as did the judge below — that L & R had no general common-law duty to assure the safety of the vehicle leased to Tropeano and that, accordingly, the jury were incorrectly instructed regarding such a duty during the first trial. The motor vehicle annual inspection laws, G. L. c. 90, § 7A, and 540 Code Mass. Regs. § 4.03, imposed only limited duties on L & R as the owner of the vehicle,[14] and L & R assumed no duty of maintenance or care under the lease. The lease did give L & R the right to

---

that "(1) the defendant entrusted a vehicle to an incompetent or unfit person whose incompetence or unfitness was the cause of the plaintiff's injuries; (2) the persons who owned and controlled the vehicle gave specific or general permission to the operator to drive the automobile; and (3) the defendant had actual knowledge of the incompetence or unfitness of the operator to drive the vehicle." *Picard* v. *Thomas,* 60 Mass. App. Ct. 362, 369 (2004).

[14]General Laws c. 90, § 7A, provides, in part, that the registrar of motor vehicles shall establish a system of annual inspections which "shall include, but not be limited to, an annual maintenance inspection to determine the proper and safe condition of the following: brakes, stop lamps, lights, directional signals, horn, vehicle identification number, steering and suspension systems, glazing, windshield wipers and cleaner, number plates, tires, fenders, bumpers,

inspect the vehicle upon request, see note 6, *supra.* But that provision was designed to preserve the value and utility of the vehicle; it did not create an affirmative obligation on L & R to inspect or maintain the vehicle.

We also conclude that the erroneous instruction prejudiced L & R such that the judge did not abuse his discretion in deciding that a new trial was warranted. See *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.),* 427 Mass. 1, 14 (1998). Under the broad duty of care given in the original instructions, the jury could have found L & R negligent for failing to discover the brake fluid leak or for failing to itself repair the brakes, even though the car was in good working order when it left L & R's possession and was delivered to Tropeano. Such a result would be inconsistent with L & R's limited duties as bailor.[15]

For the reasons set out above, the order allowing L & R's motion for a new trial is affirmed. The judgment entered in the second trial is affirmed.

*So ordered.*

---

external sheet metal, reflectors, splash guards, chock blocks, safety belts and exhaust system." Section 4.03(1) of 540 Code Mass. Regs. requires "[e]very owner or person in control of a Massachusetts registered motor vehicle" to submit the vehicle for annual inspection. Neither the regulation nor the statute makes any different provision for owners who have leased the vehicle to another under a long-term lease.

[15]We decline the plaintiff's invitation to create a duty specific to those who lease cars to people with limited financial means. The plaintiff argues that L & R should have reasonably foreseen that a "subprime," cash-strapped borrower like Tropeano would not maintain her vehicle properly. Under the terms of the lease contract, however, L & R lacked meaningful control over the vehicle. Without that control, L & R could not have had a duty to maintain directly the vehicle. Cf. *Silvia* v. *Woodhouse,* 356 Mass. 119, 123 (1969); *O'Gorman* v. *Antonio Rubinaccio & Sons,* 408 Mass. 758, 762-763 (1990). Nor could L & R have had a duty to monitor the maintenance performed by Tropeano. "As a general principle of tort law, 'there is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another.' " *Lev* v. *Beverly Enterprises-Mass., Inc.,* 457 Mass. 234, 242 (2010), quoting from Restatement (Second) of Torts § 315 (1965). Such duties only exist in "narrowly prescribed circumstances, where a special relationship exists between the person posing the risk and the one who can prevent the harm." *Ibid.*