MIGUEL VINTIMILLA vs. NATIONAL LUMBER COMPANY.

No. 12-P-1101.

Plymouth. April 5, 2013. - November 6, 2013.

Present: VUONO, CARHART, & AGNES, JJ.

*Negligence,* Entrustment, Forklift truck. *Contract,* Equipment lease. *Bailment.*
*Practice, Civil,* Summary judgment. *License.*

In a civil action alleging negligent entrustment against the defendant lessor of
a forklift that had been leased to the plaintiff's employer and from which,
while it was being operated by an unlicensed person, the plaintiff fell and
was injured, there was no error in the grant of summary judgment in favor
of the defendant, where no duty of care ran from the defendant beyond the
lessee, and nothing required the defendant to check whether the lessee pos-
sessed proper licensure to operate the equipment. [494-497] AGNES, J.,
dissenting.

CIVIL ACTION commenced in the Superior Court Department on
April 10, 2008.

A motion to amend the complaint was heard by *Thomas F.
McGuire, Jr.,* J., and the case was heard by him on a motion for
summary judgment.

*Douglas Smith* for the plaintiff.

*Joseph G. Yannetti* (*Christian A. Young* with him) for the
defendant.

CARHART, J. The plaintiff appeals from the allowance of the
defendant's motion for summary judgment on his claim for
negligent entrustment and the denial of his motion to amend his
complaint. We affirm.

*Background.* The plaintiff, Miguel Vintimilla, filed a com-
plaint against National Lumber Company (National Lumber)
alleging negligent entrustment. Subsequently, Vintimilla moved
to amend his claim by adding a count alleging unfair or decep-
tive acts or practices pursuant to G. L. c. 93A. The judge, in a

detailed memorandum, allowed summary judgment in favor of National Lumber. At the same time, the judge denied Vintimilla's motion to amend the complaint to add a c. 93A count on the ground that the motion was futile in light of his allowance of summary judgment on the negligent entrustment count.

The facts are not in dispute and in order to frame the issue on appeal, we recite them as stated by the judge in his memorandum of decision: "On November 26, 2007, National Lumber leased a forklift to Vermont Construction [Company (Vermont Construction)]. The lease agreement stated that the lessee 'shall use the equipment in a careful and proper manner and shall comply with all national, state, municipal, police and other laws, ordinances and regulations in anywise [*sic*] relating to the possession, use, or maintenance of the equipment.' This was the first time National Lumber leased equipment to Vermont Construction. National Lumber's officers and employees did not know, and did not inquire, whether Vermont Construction's employees had a license to operate the forklift or whether they were competent to operate forklifts. National Lumber's officers and employees were unaware of any practice of using a forklift to lift a person into the air. Michael Gosselin, a sales representative of National Lumber who arranged for the lease of the forklift to Vermont Construction, was aware that Vermont Construction had been cited in the past for violations of [Occupational Safety and Health Administration] safety regulations. He was not aware of the specific nature of those violations. When the forklift was leased, National Lumber provided an instruction manual for it to Vermont Construction. National Lumber did not provide any other instruction regarding the operation of the forklift. On December 21, 2007, Vintimilla was standing on the forks of the forklift when he fell thirty-five feet to the ground, sustaining injuries. At the time of the accident, the forklift operator did not have a license to operate the forklift. The operator had received no training in the operation of a forklift."

*Discussion.* The sole issue in this case is whether the judge erred in granting summary judgment by concluding that National Lumber was not liable for Vermont Construction's act of permitting an unlicensed person to operate the forklift. We review a grant of summary judgment de novo, looking to the summary

judgment record to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Roman* v. *Trustees of Tufts College*, 461 Mass. 707, 710-711 (2012), quoting from *Kennie* v. *Natural Resource Dept. of Dennis*, 451 Mass. 754, 759 (2008). In order to set out a claim for negligent entrustment, Vintimilla must prove "(1) [National Lumber] entrusted [the forklift] to an incompetent or unfit person whose incompetence or unfitness was the cause of [his] injuries; (2) [National Lumber] gave specific or general permission to the operator to [operate the forklift]; and (3) [National Lumber] had actual knowledge of the incompetence or unfitness of the operator." *Picard* v. *Thomas*, 60 Mass. App. Ct. 362, 369 (2004).

Vintimilla argues that, pursuant to G. L. c. 146, §§ 53-54, National Lumber had a duty to check whether Vermont Construction had a hoisting license to operate the forklift before leasing the equipment. In support of this argument, Vintimilla relies on *Mitchell* v. *Hastings & Koch Enterprises, Inc.*, 38 Mass. App. Ct. 271, 277 (1995), in which we held that "an owner who permits operation of his car by one whose license has been suspended or revoked, regardless whether he has actual knowledge of that fact, may himself be found responsible, on a negligent entrustment basis, for the negligent operation of the unlicensed driver."

Here, however, Vintimilla faces the insurmountable burden of showing that National Lumber somehow entrusted the forklift to the operator of the forklift, rather than to Vermont Construction. See *Kassis* v. *Lease & Rental Mgmt. Corp.*, 79 Mass. App. Ct. 784, 790 n.15 (2011). Indeed, National Lumber did not entrust the forklift directly to the operator, as occurred in the cases cited by Vintimilla. See *Gordon* v. *Bedard*, 265 Mass. 408, 412 (1929); *Davis* v. *Walent*, 16 Mass. App. Ct. 83, 87-89 (1983); *Mitchell* v. *Hastings & Koch Enterprises, Inc.*, *supra*. Rather, National Lumber entered into a lease agreement with Vermont Construction, whereby Vermont Construction agreed to "use the equipment in a careful and proper manner and . . . comply with all national, state, municipal, police and other laws, ordinances and regulations in anywise [*sic*] relating to the

possession, use, or maintenance of the equipment." The lease agreement further provided that National Lumber "SHALL NOT BE HELD RESPONSIBLE FOR ANY DIRECT OR CONSEQUENTIAL DAMAGES OR LOSSES RESULTING FROM THE INSTALLATION, OPERATION, OR USE OF THE [FORKLIFT]."

The facts lead us to conclude that this case is controlled by *Kassis* v. *Lease & Rental Mgmt. Corp., supra.* In *Kassis,* a woman was killed after being struck by a vehicle that the defendant (a business that leased, sold, and financed motor vehicles) had leased to the operator. *Id.* at 785. The administrator of the decedent's estate sued the defendant for negligence, alleging that the defendant had a duty to maintain the mechanical condition of the vehicle, which, if properly maintained, would not have caused the accident that resulted in the death of the decedent. *Id.* at 786-788. We concluded that although parties generally have a duty of reasonable care, "where (as here) the owner has leased the vehicle to another under a long-term lease, we think the owner's obligations are controlled by the common law of bailment to the extent they are not otherwise governed by the terms of the lease or by statute." *Id.* at 788.

We noted that the governing regulation, which required " '[e]very owner or person in control of a Massachusetts registered motor vehicle' to submit the vehicle for annual inspection," did not differentiate between owners and lessees of vehicles, nor did the governing statute. *Id.* at 789 n.14, quoting from 540 Code Mass. Regs. § 4.03(1) (1999). Moreover, the lease agreement shifted the responsibility of maintenance and upkeep to the lessee. *Id.* at 785. Under the law of bailment, "[a]bsent contract, statute, or an agency relationship, a bailor of property is not liable to third persons injured as a result of a bailee's negligent use or operation of the bailed property." *Id.* at 789. Thus, we held that the defendant did not have a "duty to assure the safety" of the leased vehicle. *Id.* at 789.

Similar to the statutes and regulations in *Kassis,* the statutes governing hoisting equipment, G. L. c. 146, do not differentiate between owners and lessees. And like the lease agreement in *Kassis,* the lease agreement between National Lumber and Vermont Construction shifted responsibility for safety compli-

ance from the former to the latter. There is nothing in the record that suggests that the rental of the forklift was anything more than an arm's-length transaction between two businesses. In these circumstances, we see no basis for imposing a duty of care running from the lessor beyond the lessee, and indeed, doing so may result in unintended litigation. Nor do we see any basis for requiring, as the dissent urges, that National Lumber check whether Vermont Construction possessed a hoisting license. Given our conclusion, we need not address Vintimilla's other arguments.[1]

*Judgment affirmed.*

AGNES, J. (dissenting). We are asked to decide whether the defendant, National Lumber Company (National Lumber), owed a duty of care to the plaintiff, Miguel Vintimilla, who was seriously injured at a construction site when he fell thirty-five feet to the ground from plywood planking that had been placed across the forks of a Lull All Terrain Forklift (forklift). The operator of the forklift was unlicensed. The forklift had been leased by its owner, National Lumber, to Vermont Construction Company (Vermont Construction),[1] which employed both the unlicensed operator and the plaintiff. In fact, no one employed

---

[1] The dissent relies heavily on the legislative history governing the operation of hoisting machines as a basis for concluding that National Lumber had a duty to ensure proper licensure for all operators of the machine it leased to Vermont Construction. Apart from the fact that exercising such a proposed duty of care would be unduly cumbersome, we ask, for example, (1) What specific steps must lessors undertake to ensure compliance with this duty of care? Would a simple inquiry or warning suffice? (2) Must lessors investigate all operators employed by lessees to ensure proper licensure? (3) Would such investigations continue through the duration of a lease, as operators in the lessee's employ come and go? (4) What assurances do lessors have that, if a license is produced, operators will safely operate machinery? The law, at present, does not impose such a duty.

[1] Initially, the plaintiff sued D. Pallotta Construction Company, Inc. (Pallotta), the general contractor on the work site, for negligence; Pallotta then brought Vermont Construction into the case as a third-party defendant. The plaintiff was allowed to amend his complaint to include a claim for negligent entrustment against National Lumber. Vermont Construction could neither be located nor served and was dismissed as a party. The parties stipulated to the dismissal of Pallotta.

by Vermont Construction had a hoisting license to operate the forklift as required by G. L. c. 146, § 53, as amended by St. 1991, c. 485, §§ 1, 2 (providing that the owner and user of a hoisting machine such as the forklift involved in this case "shall not operate, or cause to be operated, such machinery unless the person operating it is duly licensed").[2,3]

The plaintiff maintains, and I agree, that National Lumber had a duty to determine whether Vermont Construction or someone acting on its behalf had a hoisting license before delivering a dangerous instrumentality such as a forklift. See *Jesionek* v. *Massachusetts Port Authy.*, 376 Mass. 101, 106 (1978) (forklift described as a "dangerous machine" that is complex to operate).[4] Accordingly, for the reasons that follow, I respectfully dissent.

1. *Duty of care: legal framework.* Whether a duty of care is owed to another is a question of law, see *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989), that is determined by reference to our social values, customs, and public policy. *Cremins* v. *Clancy*, 415 Mass. 289, 292 (1993). The duty of care analysis begins with the general principle that "every actor has a duty to exercise reasonable care to avoid physical harm to others." *Remy* v. *MacDonald*, 440 Mass. 675, 677 (2004).

---

[2] General Laws c. 146, § 53, was amended in 2010. I refer to the version of the statute in effect prior to the 2010 amendment.

[3] The record indicates that Michael Gosselin, National Lumber's on-site agent and sales employee, recommended Vermont Construction for the job and arranged for it to rent the forklift despite knowing that Vermont Construction had previous Occupational Safety and Health Administration (OSHA) violations due to its "unconventional" work methods (e.g., making staging planks for workers to stand on out of non-OSHA approved materials). Gosselin neither knew nor asked whether any Vermont Construction employee had the required license to operate the forklift. In addition, a National Lumber employee testified at a deposition that the forklift in question was not designed to be used as a work platform but rather as a material transporter, and that he was aware that using the forklift to lift people would be improper. He also testified that there was no discussion with Vermont Construction about the fact that the forklift was not designed to lift people.

[4] See, e.g., National Institute for Occupational Safety and Health Publication Number 2001-109, Preventing Injuries and Deaths of Workers Who Operate or Work Near Forklifts (2001) ("Forklifts, also known as powered industrial trucks, are used in numerous work settings, primarily to move materials. Each year in the United States, nearly 100 workers are killed and another 20,000 are seriously injured in forklift-related incidents").

The next consideration is the foreseeability of the potential harm. See, e.g., *McDonough* v. *Whalen,* 365 Mass. 506, 512 (1974); *Whittaker* v. *Saraceno,* 418 Mass. 196, 198 199 (1994); *Coombes* v. *Florio,* 450 Mass. 182, 187 (2007) (Ireland, J., concurring); *Commerce Ins. Co.* v. *Ultimate Livery Serv., Inc.,* 452 Mass. 639, 648 (2008); *Harrison* v. *Mattapoisett,* 78 Mass. App. Ct. 367, 373 (2010). National Lumber could certainly foresee that if neither Vermont Construction nor any of its employees or agents had a hoisting license, an unlicensed operator would operate the forklift and, as a result, a person working on or around the forklift, such as the plaintiff, could be injured.[5] See *Davis* v. *Walent,* 16 Mass. App. Ct. 83, 88-89 (1983); *Mitchell* v. *Hastings & Koch Enterprises, Inc.,* 38 Mass. App. Ct. 271, 277 (1995). The foreseeability of the potential harm must, however, be balanced against the burden to be imposed. See *Vaughan* v. *Eastern Edison Co.,* 48 Mass. App. Ct. 225, 229 (1999). An owner-lessor's obligation to perform a license

---

[5]Cases involving the sale and service of liquor are illuminating. In a commercial setting such as a bar, the risk of personal injury associated with alcohol intoxication is so well known and obvious "that a business that is in a position to control or reduce that risk has a duty to do so." *Tobin* v. *Norwood Country Club, Inc.,* 422 Mass. 126, 135 (1996). Cases involving social host liability are also revealing. When the social host is not in control of the liquor consumed by guests, the social host is not liable for the consequences resulting from an intoxicated guest who causes injury to a third party even though the social host may control the premises on which the liquor is consumed. See *Juliano* v. *Simpson,* 461 Mass. 527, 534 (2012). However, when the social host serves alcohol to a guest or makes it available, the social host may be liable to a third party injured by an intoxicated guest. See, e.g., *McGuiggan* v. *New England Tel. & Tel. Co.,* 398 Mass. 152, 161-162 (1986). A social host's liability for a guest's conduct depends on control and expectation. In the former situation, society "doubt[s] that a social host can effectively prevent a guest from drinking the guest's own supply of alcohol." *Juliano, supra* at 535. In the latter situation, "society may fairly expect" the social host to act like a bartender and "shut off guests who should not be drinking because of age or intoxication." *Ibid.,* quoting from *Ulwick* v. *DeChristopher,* 411 Mass. 401, 406 (1991). In the context of hoisting machinery leasing, the owner-lessor has no effective control over the lessee's conduct during the rental period, thus imposing on the owner-lessor a duty to supervise this conduct would be unreasonable (unless it is a duty assumed voluntarily by contract). However, because hoisting equipment is under the owner-lessor's control at the time of the lease and the Legislature has mandated that only properly licensed persons operate such equipment, I maintain that society may fairly expect the owner-lessor to undertake a license check before delivering such a dangerous piece of machinery to the lessee.

check before delivering hoisting equipment to a lessee is not a burdensome duty. The record indicates that this was the practice followed by the manager in charge of renting hoisting equipment for National Lumber. Following the plaintiff's injury, National Lumber adopted a policy that requires customers to show a State hoisting license before they are allowed to rent such a forklift. See *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 780-781 (1975). See also Mass. G. Evid. § 407 (2013) (evidence of subsequent remedial measure adopted by alleged tortfeasor is admissible for limited purpose of proving "feasibility of precautionary measures").[6] When, as in this case, statutory and regulatory changes identify an important public policy, those developments "are highly relevant" to the duty of care analysis. *Tobin* v. *Norwood Country Club, Inc.*, 422 Mass. at 133. Ultimately, a judge's best judgment of the "fair and just limits to legal" liability determines whether one party owes a duty of care to another. *Whittaker* v. *Saraceno*, 418 Mass. at 198.

2. *Duty of care: consequences.* National Lumber has not identified a reason a duty to perform a license check before delivering hoisting machinery to the lessee would be unfair or unjust. It will not expose National Lumber or its industry to unpredictable consequences. The plaintiff does not argue that National Lumber is required to monitor the actions of each person the lessee might assign as a forklift operator, or to maintain the forklift in a safe condition once it is delivered to the lessee. See *Lev* v. *Beverly Enterprises Mass., Inc.*, 457 Mass. 234, 242 (2010), quoting from Restatement (Second) of Torts § 315 (1965). ("[t]here is no duty to control the conduct of a third person as to prevent him from causing physical harm to another"). The duty to undertake a license check does not require National Lumber to verify or to investigate the representations made by the lessee. See *Nunez* v. *A&M Rentals, Inc.*, 63 Mass. App. Ct. 20, 25 (2005) (G. L. c. 90, § 32C, which prohibits automobile rental to someone who is not duly licensed, does not require rental car agency to verify lessee's representation

---

[6]Another factor that makes a license check by National Lumber feasible is that the Department of Public Safety provides, at no charge and for the convenience of the public, an online, automated "License Lookup" system. Persons who hold a license to operate a forklift must carry the license on their person. G. L. c. 146, § 54. See note 10, *infra*.

that he is licensed). Instead, the plaintiff claims only that National Lumber has a duty to check for a license before turning danger-ous hoisting equipment over to a lessee. See *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 395 (1916) ("The more prob-able the danger, the greater the need of caution").

I believe National Lumber owed a duty of care to the plaintiff. Therefore, whether National Lumber breached that duty and, if so, whether that breach was a legal cause of the plaintiff's injuries, are questions of fact that a jury should decide. I write further to explain why recognition of this limited duty of care is consistent with developments in Massachusetts law.

a. *Statutory changes have modified the common law of bail-ment with regard to certain types of hoisting equipment.* i. *Mas-sachusetts hoisting machinery licensing law.* During the relevant time period, the Legislature had established a public policy that imposed on the "owner" or "user" of a forklift like the one involved in this case a duty to "not operate, or cause to be oper-ated" the machinery unless the operator holds a license. See G. L. c. 146, § 53.[7] See also G. L. c. 146, § 54A (criminal penalties apply to anyone who permits unlicensed person to oper-ate hoisting equipment).

Although requiring a hoisting license is not new, in recent years the Legislature has made significant changes in the law that reflect a special concern that only persons with a license or temporary permit operate such equipment.[8] For example, in 1991, legislation was adopted that required the Commissioner of Public Safety (commissioner), in consultation with industry

---

[7]General Laws c. 146, § 53, provides that "[n]o person shall operate der-ricks, cableways, machinery used for discharging cargoes, temporary elevator cars used on excavation work or used for hoisting building material, when the motive power to operate such machinery is mechanical and other than steam, unless he holds a license as hereinafter provided. The owner or user of such hoisting machinery shall not operate, or cause to be operated, such machinery, unless the person operating it is duly licensed. Any operator of such hoisting machinery when it is being used exclusively for agricultural purposes shall be exempt from the provisions of this section."

[8]In determining the scope of this statutory duty, we must be mindful not only of the Legislature's specific words in § 53, but also consider all the parts of the legislative scheme and "interpret the statute so as to render the legislation effec-tive, consonant with sound reason and common sense." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006).

and labor interests, to develop a system of written and practical examinations as a prerequisite to obtain the required license. See St. 1991, c. 465, § 7. In 2000, the Legislature directed the commissioner to promulgate rules and regulations pursuant to G. L. c. 30A for the purpose of classifying types of hoisting machinery and establishing a system "for the issuance, denial, renewal, suspension and revocation of licenses of apprentice operators of such machinery." G. L. c. 146, § 53A, inserted by St. 2000, c. 251, § 1.

The comprehensive and detailed regulations adopted by the commissioner are found at 520 Code Mass. Regs. §§ 6.01 et seq. (1999). These regulations address the prerequisites to applying for a hoisting license,[9] and the classifications of and qualifications required for obtaining a hoisting license.[10] The regulations require operators to meet Federal medical fitness standards and to provide the licensing authority with photographic identification. See 520 Code Mass. Regs. § 6.09. The regulations also provide the Department of Public Safety authority to conduct an inspection program and impose special additional duties on operators of hoisting machinery. See 520 Code Mass. Regs. §§ 6.10, 6.11.

Finally, the Legislature has established criminal penalties for "[a]ny person who permits an unlicensed person to operate hoisting machinery." G. L. c. 146, § 54A, as amended by St. 2000, c. 251, § 3. This licensing law and the robust licensing scheme set forth in the regulations adopted under G. L. c. 146, § 53,[11] support the view that an owner and lessor like National

---

[9]See 520 Code Mass. Regs. § 6.03, which provides as follows: "License Prerequisites/requirements: (1) All applicants must be at least 18 years of age; (2) All applicants must possess a valid and current driver's license to operate a motor vehicle; (3) Applicants for a hoisting operator license shall be required to pass a written examination." Applicants also must pass a practical examination and demonstrate they know how to use the equipment.

[10]See 520 Code Mass. Regs. §§ 6.03, 6.06. There are four classes of licenses for hoisting equipment and each requires the applicant to pass a written examination and to demonstrate knowledge of the law, knowledge of how to use the equipment, and the ability to read and apply the owner's manual for the equipment. The law also requires that the license "must be carried on the person of the operator." G. L. c. 146, § 54, as amended by St. 2000, c. 251, § 2.

[11]General Laws c. 146, § 53, provides in part as follows: "The commissioner shall adopt rules and regulations under the provisions of chapter thirty A, embodying the classifications of hoisting machinery and establishing

Lumber has a duty to reasonably inquire whether a lessee's forklift operator is duly licensed.[12]

ii. *Requiring "actual knowledge" to sustain a claim for negligent entrustment is not applicable to a dangerous instrumentality such as hoisting machinery.* The Legislature's emphasis on requiring a license suggests, just as in *Mitchell* v. *Hastings & Koch Enterprises, Inc.*, 38 Mass. App. Ct. at 276-278, that hoisting equipment owners' liability should not depend on whether they have actual knowledge that the lessee is unlicensed. In *Mitchell*, we relied on G. L. c. 90, § 12, to hold that a vehicle's owner could be held liable on a theory of negligent entrustment for the injuries a third party suffers if he "permits operation of his car by one whose license has been suspended or revoked, regardless whether he has actual knowledge of that fact." *Id.* at 277. The decision in *Mitchell* was tied to the statute's terms, which were less explicit than G. L. c. 146, § 53, in imposing a duty of care on the owner and recognizing the legislation's purpose.[13] The early days of automotive travel prompted the Legislature to enact G. L. c. 90, § 12, to protect

criteria and procedures for the issuance, denial, renewal, suspension and revocation of licenses to operate hoisting machinery; provided, however, that a final adjudication that there has been a violation of federal or state occupational safety and health regulations, or any other rule adopted by the department, shall be cause for the denial, suspension or revocation of any license issued under this section. Criteria for issuance of such license shall include, but not be limited to, training and experience requirements appropriate to the categories of machinery for which the license is intended."

[12]Evidence in the record suggests that such a duty is compatible with industry practices. Charles Majka, the manager in charge of renting hoisting equipment for National Lumber, knew that a license was required to lawfully operate the type of forklift involved in this case. He testified that "he does not normally rent hoisting equipment to anyone without a hydraulic engineer's license," but "that it was not policy at the time he rented the forklift to Vermont Construction to check for a license," and that "he was not aware whether anyone at Vermont Construction had the required state license to operate the hoisting forklift."

[13]At the time of our decision in *Mitchell*, G. L. c. 90, § 12, read as follows: "No person shall employ or hire as an operator any person not licensed in accordance with this chapter. No person shall allow a motor vehicle owned by him or under his control to be operated by any person who has no legal right so to do, or in violation of this chapter." This statute was interpreted to impose on an automobile owner a duty to determine that another is properly licensed before permitting him to operate the car. The statute was amended in 2005 and 2012; in both amendments, the Legislature required an owner to act

travelers from the dangers associated with unlicensed operators of the new motorized wagons. See *Gordon* v. *Bedard,* 265 Mass. 408, 412 (1929).[14] The same safety considerations exist in the statutory scheme requiring a license to operate hoisting machinery.

A forklift is a dangerous instrumentality. See *Jesionek* v. *Massachusetts Port Authy.,* 376 Mass. at 106. The proper operation of a forklift, unlike an automobile, is not a matter of common knowledge. Supporting this view is the most recent legislative amendment to the comprehensive licensing scheme governing the use of hoisting machinery. In G. L. c. 146, § 65A, inserted by St. 2010, c. 358, § 5, the Legislature expressed its concern about the dangers associated with unlicensed persons operating forklifts. The statute provides that those in the business of renting compact hoisting equipment on a short term basis to lessees who do not have hoisting licenses are responsible for ensuring the lessee obtains a temporary permit. No such temporary permit is issued unless the lessee passes an examination administered by the lessor that the commissioner has previously approved.[15]

iii. *The lack of privity between National Lumber and the*

"knowingly" before liability attaches for negligent entrustment of an automobile to a person who is unlicensed or whose license has been suspended or revoked. See G. L. c. 90, § 12, as amended by St. 2005, c. 122, § 1, and St. 2012, c. 139, § 94. See also *Nunez* v. *A&M Rentals, Inc.,* 63 Mass. App. Ct. at 23.

[14]In *Gordon* v. *Bedard,* 265 Mass. at 412, the Supreme Judicial Court noted that "[t]he statute was passed to make the roads more safe and convenient for travellers by preventing unlicensed persons from operating motor vehicles thereon. The purpose of licensing operators of automobiles is to make it reasonably certain that the licensee is qualified for the task and a proper person to be licensed. G. L. c. 90, §§ 8, 10. Negligent operation of an automobile endangering the safety of other travellers is likely to follow if an unlicensed person is given complete control of its operation." The same logic applies to G. L. c. 146, § 53.

[15]General Laws c. 146, § 65A, provides that lessees of "compact hoisting machinery" requiring a license under G. L. c. 143, § 53, "on a temporary basis," now have the option to apply to the owner for a "temporary permit" provided that the owner obtains authorization for such rentals from the commissioner. The law essentially substitutes the owner for the commissioner for purposes of issuing a "temporary permit." "If the applicant meets the criteria for issuance of a temporary permit established by the commissioner under said section 53, such applicant shall then be required to pass an examination under the standards set in the regulations promulgated under said section 53." *Ibid.* Temporary permits are not renewable and only one may be issued in each forty-five day period.

*actual forklift operator is not a bar to recovery.* Under G. L. c. 106, § 2A-216, inserted by St. 1996, c. 377, § 2, "[l]ack of privity between plaintiff and defendant shall be no defense in any action brought against the . . . lessor of goods to recover damages for . . . negligence, although the plaintiff did not rent or lease the goods from the defendant if the plaintiff was a person whom the . . . lessor might reasonably have expected to use, consume or be affected by the goods." When National Lumber rented a forklift to Vermont Construction, it could foresee that an employee of the lessee, such as the plaintiff, might be affected by the equipment's use. National Lumber may not exclude or limit the operation of G. L. c. 106, § 2A-216. This renders ineffectual provisions in National Lumber's lease agreement with Vermont Construction requiring the lessee to comply with all applicable laws regarding the equipment and absolving the lessor of responsibility for any damages resulting from the operation or use of the forklift.[16]

b. *Recognizing a duty to undertake a license check is not contrary to the reasoning in* Kassis. *Kassis* v. *Lease & Rental Mgmt. Corp.*, 79 Mass. App. Ct. 784 (2011), involved the long-term lease of an automobile. The plaintiff's decedent was killed when struck by the leased vehicle, which was driven by the lessee. The lessee had allowed the vehicle's annual inspection sticker to expire and, after noticing problems with the brakes, had had them repaired shortly before the accident. The un-contested evidence at trial was that the repair to the brakes was faulty. The plaintiff's theory was that even though the lessor did not have a contractual duty under the lease to care for the vehicle, the mere fact that State law required owners to annually inspect their vehicles made the lessor responsible for the third party's negligent brake repairs. See *id.* at 789 and n.14. In keeping with the common law of bailment, we rejected this argument. *Id.* at 789. *Kassis* is both factually and legally distinguishable from this case.

In this case, unlike in *Kassis*, the plaintiff does not seek to

---

[16]In addition, a contractual provision in a lease cannot negate a duty imposed by law nor alter a public policy adopted by the Legislature. See *New Haven Road Constr. Co.* v. *Long*, 269 Mass. 16, 18 (1929); *Allen* v. *Lawrence*, 318 Mass. 210, 213 (1945); *Levenson* v. *Feuer*, 60 Mass. App. Ct. 428, 437-438 (2004).

hold the owner liable for the negligence of a third party. Instead, the plaintiff seeks to bring himself within the scope of the duty a bailor always has had "to deliver nondefective chattels . . . to bailees *capable of using them safely*" (emphasis added). *Kassis*, 79 Mass. App. Ct. at 788. The plaintiff maintains that this common-law duty has been modified and enlarged to require a license check as a result of legislative and regulatory changes that attach significance to the license requirement for the lawful operation of hoisting machinery. See *id.* at 789 (common law of bailment may be modified by "contract, statute, or an agency relationship"). Thus, the present case more closely resembles *Davis* v. *Walent*, 16 Mass. App. Ct. at 87-90, a negligent entrustment case in which this court found the vehicle owner liable even though he did not know that the person to whom the vehicle was entrusted had a restricted license.

*Conclusion.* "It is necessary for the common law to grow, and the overriding considerations are justice and the good of the community. The necessity for growth often requires the court to reach value judgments. Objectivity in the process is especially difficult at these junctures." Hennessey, Judges Making Law 13 (Flaschner Jud. Inst. 1994). When, as in this case, a value judgment has been made by the Legislature about the importance of a proper license before a dangerous machine like a forklift is operated, and the record before the court indicates that the burden of requiring an owner and commercial lessor like National Lumber to check for a license before turning a forklift over to a lessee is modest, recognition of such a duty of care is both just and in keeping with the common-law tradition of incremental growth for the good of the community. For these reasons, I believe that the judgment should be reversed and the case should be remanded for a trial or other disposition.[17]

---

[17]The judge also denied the plaintiff's motion to amend the complaint to add an additional count against National Lumber under G. L. c. 93A on grounds that the amendment would be futile since more than mere negligence is required to support such a claim. I believe this ruling also was erroneous. A practice may be unfair or deceptive under G. L. c. 93A if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare." 940 Code Mass. Regs. § 3.16(3) (1993). See, e.g., *Danusis* v. *Longo*, 48 Mass. App. Ct. 254, 263-264 (1999).