SUPERIOR COURT 
 
 MASSACHUSETTS PREMIER SOCCER LLC D/B/A GLOBAL PREMIER SOCCER v. BURNS & LEVINSON LLP AND PERRY A. HENDERSON, JR.

 
 Docket:
 2084CV00398-BLS2
 
 
 Dates:
 June 6, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING DEFENDANTS’ MOTION FOR SUMMARY JUDGMENT
 
 

 Massachusetts Premier Soccer LLC ran a for-profit youth soccer business under the name Global Premier Soccer. The parties refer to the plaintiff as “GPS.” Many of GPS’s coaches were foreign nationals who were present in the United States under temporary, non-immigrant visas. During 2018, federal agents began to investigate GPS’s use of these visas for its coaches. Attorney Perry Henderson and his law firm Burns & Levinson were doing a broad array of corporate legal work for GPS, but not representing or counselling GPS with respect to its visa program. GPS’s chief executive officer, Joseph Bradley, knew about the apparent federal investigation and shared some of that information with Henderson. In October 2019, federal agents executed a search warrant at GPS’s headquarters. GPS contends that its reputation and business were severely harmed by this surprise raid, and that it could have avoided this harm if Henderson had told other board members about the investigation.
GPS has three remaining claims against Burns & Levinson and Henderson.[1] First, it alleges that Henderson was negligent in not disclosing to GPS’s board of directors the information shared by CEO Bradley about the apparent federal visa investigation, that if the Board had been aware of what was going on it could have managed the situation and avoided the surprise execution of a search warrant, and that Henderson’s alleged breach of a duty of disclosure to the Board substantially harmed GPS. Second, GPS claims that Burns & Levinson had a conflict of interest because it was representing Bradley and GPS at the same time. Third, it also claims that Burns & Levinson improperly billed GPS for worked done solely for Bradley.
The Court will allow the motion by Burns & Levinson and Henderson on these claims. As for the first claim, the summary judgment record establishes that
 
--------------------------------------------
 
[1]        GPS voluntarily dismissed its fourth claim for “injunctive relief.”
 
                                                            -1-
 
these defendants did not have and did not breach any duty to disclose directly to GPS’s board the information that was already known to its CEO. GPS did not articulate any substantive opposition to the summary judgment motion with respect to the other two claims.
1. Negligence Claim. Though GPS has sued Burns & Levinson and Attorney Henderson for legal malpractice, it does not contend that these defendants were negligent in providing legal services or advice. Instead, GPS asserts in count I of its complaint that these Defendants were negligent because they allegedly had and breached an affirmative obligation under Mass. R. Prof. Conduct 1.13(b) to notify other board members that federal officials seemed to be looking into the GPS visa program. The Court will allow Defendants’ request for summary judgment on this claim because the summary judgment record establishes that Burns & Levinson and Henderson did not have and did not breach any such duty under the circumstances of this case.
1.1. Background Facts. The summary judgment record establishes that the following facts are not in dispute.
Joe Bradley founded GPS about twenty-five years ago. Legacy Global Sports acquired GPS in 2016 and thereafter had majority control of the company. Bradley continued to serve as CEO of GPS, and as a member of the GPS board of directors, until after the federal raid in October 2019.
Burns & Levinson performed a variety of employment, tax, and general corporate legal work for GPS starting in 2012 and continuing through late 2019. Burns & Levinson never filed any visa petitions for GPS and never did any other legal work on GPS’s visa program, with the exception of (I) providing advice regarding the tax implications of housing for H-2B visa holders, (ii) ensuring compliance with minimum prevailing wage requirements for migrant workers, and (iii) work on business agreements that related to visa holders, including an agreement under which GPS paid a fee to a third party who served as petition for P-1 visa recipients.
GPS retained other lawyers and law firms, outside of Burns & Levinson, to provide immigration law services and advice. Pabian Law, LLC, represented GPS in connection with its visa program from late 2013 to late 2017. Soon thereafter, GPS retained the firm Harter Secrest to provide general immigration law and services and to submit immigration petitions and applications.
 
                                                            -2-
 
In April 2018, Bradley emailed Henderson that “2 ICE/USCIS officers showed up at one or guys apartments at 6am today in Worcester,” and asked for a referral to an immigration lawyer who could assist GPS in connection with that visit.
Later in 2018, Bradley learned that his “Trusted Traveler” status under the Global Entry Program had been revoked. He tried to find out why, including through a Freedom of Information Act request, but was not able to obtain any explanation. Bradley consulted an attorney at Harter Secrest about the issue. He also asked Henderson for a referral to another lawyer who could help him with the issue. On December 3, 2018, Henderson emailed colleagues at Burns & Levinson to ask for suggestions. Ten days later, Henderson sent the names of two immigration attorneys to Bradley.
Meanwhile, on December 12, 2018, Bradley forward to Henderson an email from Brian Feldman, who was a Harter Secrest attorney representing GPS on immigration matters. In the forwarded email, Feldman told Bradley to let him know if Bradley “or others at the company are approached by agents” and advised Bradley that, if that were to happen, Bradley should contact Feldman “before saying anything to the government.” As his cover note to Henderson, Bradley wrote, “This clown is scare mongering.”
Two days after that, Bradley forwarded to Henderson a series of emails between Bradley and Feldman. These emails included one in which Feldman told Bradley that “[t]here are symptoms of a serious investigation” and “that ignoring this problem is dangerous.” Feldman also advised that Bradley speak with “individual counsel” about whether Bradley should retain his own attorney.
Burns & Levinson did not notify anyone on the GPS board of directors (other than Bradley) about the apparent federal investigation.
On October 8, 2019, federal agents executed a search warrant a GPS’s headquarters. They made quite a mess and took away several computers, electronic storage devices, and boxes of documents. Afterward, GPS’s chief operating officer Justin Capell contacted a lawyer at Harter Secrest about the search warrant execution; he did not call anyone at Burns & Levinson.
1.2. Analysis. GPS contends that Burns & Levinson and Henderson had a duty under Mass. R. Civ. P. 1.13(b) “to disclose to the non-conflicted members of the GPS board of managers the existence of the criminal investigation as a
 
                                                            -3-
 
corporate crisis involving ongoing business practices at the core of the business.” The Court is not persuaded. It concludes that, as a matter of law, Defendants did not have and did not breach any such duty.
With respect to a negligence claim, “[i]he existence of a duty of care is a question of law and, therefore, is an appropriate subject for summary judgment. … If a defendant does not owe a legal duty to a plaintiff, then there can be no actionable negligence.” Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234, 240 (2010); accord, e.g., Shea v. Caritas Carney Hosp., Inc., 79 Mass. App. Ct. 530, 534–535 (2011) (affirming summary judgment for defendants because plaintiff failed to establish that they owed any duty to warn murder victim that his stepson was dangerous).
Similarly, even where a defendant owed a duty of care, the defendant is still entitled to summary judgment on a negligence claim if “the material facts, when viewed in the light most favorable to the plaintiff, are insufficient to establish that the” defendant “committed a breach of any legal duty they may have owed to the plaintiff.” Petrell v. Shaw, 453 Mass. 377, 378 (2009) (affirming grant of summary judgment on claim of negligent in hiring, retaining, or supervising parish priest because plaintiff had no evidence suggesting defendants overlooked past sexual misconduct or failed to follow written policy governing response to reports of clergy sexual misconduct, and plaintiff made no claim that written policy was unreasonable); accord Nunez v. A&M Rentals, Inc., 63 Mass. App. Ct. 20, 22 (2005) (affirming grant of summary judgment on claim of negligent entrustment of motor vehicle because plaintiff produced no evidence suggesting that defendant had any knowledge any incompetence or unfitness on part of driver). That is because a party seeking summary judgment “may satisfy their burden of demonstrating the absence of a triable issue either by submitting evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial.” Petrell, 453 Mass. at 381.
Rule 1.13(b), which serves as the centerpiece for GPS’s negligence claim, provides as follows:
If a lawyer for an organization knows that an officer, employee, or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law
 
                                                            -4-
 
that reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by applicable law.
When used  in the Massachusetts Rules of  Professional  Conduct,  the verb    “ ‘knows’ denotes actual knowledge of the fact in question.” See Mass. R. Prof. Conduct 1.0(h). The Rules distinguish between “actual knowledge” and “reasonable belief.” Id. ¶¶ (h) & (m).
The summary judgment record establishes that Defendants had no duty under Rule 1.13(b) to inform other board members about the apparent federal investigation for several, independent reasons.
First, the limited information shared with Attorney Henderson did not give him “actual knowledge” that Bradley or anyone else at GPS had done or was doing anything that was “a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization.” All that Henderson knew was that federal agents were conducting some kind of investigation into GPS’s visa program. Rule 1.13(b) does not impose a duty on outside corporate counsel to directly inform the board of directors any time they learn that the CEO is aware of an apparent federal investigation concerning some aspect of the company’s operations.
Second, Henderson had no actual knowledge—or, for that matter, any reason to believe—that the federal investigation into GPS’s visa program concerned “a matter related to the representation” of GPS by Burns & Levinson. As discussed above, Burns & Levinson was not involved in designing the visa program and did not submit any petitions seeking visas. Nothing in the limited information shared with Henderson by Bradley suggested that the apparent federal investigation was related in any way to matters or issues as to which Burns & Levinson had done legal work for or provided legal advice to GPS.
Third, the limited information shared with Henderson about the nascent federal investigation was provided to him by the CEO of GPS. During oral argument, GPS conceded that no one knew Bradley was a target of the investigation before the October 2019 execution of the search warrant. Since
 
                                                            -5-
 
Henderson had no actual knowledge that Bradley had done anything wrong, or even that federal agents might suspect Bradley had engaged in wrongdoing, Henderson and Burns & Levinson had no legal duty to bypass the company’s CEO and directly inform other board members that there seemed to be some sort of federal investigation under way. That was the CEO’s responsibility.
2. Conflict of Interest and Excessive Billing Claims. Burns & Levinson and Henderson have shown that they are entitled to summary judgment in their favor on the conflict of interest claim in count II because GPS has no evidence that it was harmed by the alleged conflict between Defendants’ representation of GPS and their (fully disclosed) representation of Bradley.
Defendants have also shown that they are entitled to summary judgment on the excessive billing claim in count IV because there is no evidence that Burns & Levinson billed for work that was not actually performed, and GPS had instructed the firm to include all services provided on its invoices, with the understanding that GPS and Bradley would sort out whether Bradley should pay any part of a particular invoice.
GPS did not respond to any of these arguments. Though GPS purported to oppose the summary judgment motion in its entirety, it cannot defeat summary judgment as to counts II and IV by making conclusory assertions without citing evidentiary support. See generally Chang v. Winklevoss, 95 Mass. App. Ct. 202, 214, rev. denied, 482 Mass. 1105 (2019) (court may not credit factual assertions “not supported by the summary judgment record”); Bergendahl v. Massachusetts Elec. Co., 45 Mass. App. Ct. 715, 718-719, rev. denied, 428 Mass. 1111 (1998), cert. denied, 528 U.S. 929 (1999) (“mere assertions of the existence of disputed facts without evidentiary support cannot defeat [a] summary judgment motion”).
A party that opposes a motion in the Superior Court must submit a written memorandum “that includes a statement of reasons, with supporting authorities, that the motion should not be allowed.” Sup. Ct. Rule 9A(a)(2). Parties therefore waive issues or arguments that they do not raise and properly develop in their written opposition.
To the extent that GPS’s memorandum hints at but does not develop or make explicit arguments in opposition to the request for summary judgment on counts II and IV, the Court deems those arguments to have been waived and declines to consider them. See Commonwealth v. Johnson, 470 Mass. 300, 319
 
                                                            -6-
 
(2014) (trial court judge “acted well within his discretion” in declining to consider unsupported and undeveloped argument in support of motion); see also Halstrom v. Dube, 481 Mass. 480, 483 n.8 (2019) (argument raised “in a cursory fashion” is waived); McCullen v. Coakley, 571 F.3d 167, 182 n.3 (1st Cir. 2009), cert. denied, 130 S.Ct. 1881 (2010) (“avoiding waiver requires more than a hint that a particular theory may be lurking; it necessitates some developed argumentation addressed to that particular theory”).
ORDER
Defendants’ motion for summary judgment is allowed. Final judgment shall enter providing that Plaintiff shall take nothing on its claims.